**John E. GREEN, Plaintiff–Appellee,**

**v.**

**J. Kenneth BRANTLEY, Edgar V. Lewis, Craig R. Smith, Garland P. Castleberry, Defendants–Appellants.**

**No. 89–8150.**

United States Court of Appeals, Eleventh Circuit.

Sept. 12, 1991.

James R. Schulz, Asst. U.S. Atty., Atlanta, Ga., Barbara L. Herwig, Wendy M. Keats, Robert Kopp, Supv. Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

Gerald Cunningham, Office of Gerald Cunningham, Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH and DUBINA, Circuit Judges.

EDMONDSON, Circuit Judge:

In this civil rights case, we decide whether we have jurisdiction to hear an interlocutory appeal from a denial of summary judgment on the ground of qualified immunity when the defendant must still face trial on another claim arising from the same occurrence. Defendants appeal the denial of summary judgment on one of two civil rights damage claims asserted against them but concede that the remaining claim must go to trial. A panel of this court refused jurisdiction, but we vacated that opinion to consider the case en banc. We now conclude that the denial of summary judgment based on qualified immunity is appealable as a collateral order under *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), even if an additional damage claim will proceed to trial regardless of the outcome of the appeal.

## I. FACTS AND BACKGROUND

The facts of this case are set out more extensively in the panel's opinion. *Green v. Brantley*, 895 F.2d 1387, 1389–90 (11th Cir.), *reh'g granted and opinion vacated*, 921 F.2d 1124 (11th Cir.1990). We offer only the following summary.

Plaintiff John Green brought this *Bivens* action against four officials of the Federal Aviation Authority in their personal capacities after a dispute over the revocation of plaintiff's Designated Pilot Examiner's ("DPE") certificate. Plaintiff has alleged two constitutional violations.[1] First, plaintiff claims he was denied a property right protected by the Administrative Procedure Act ("APA") and the Fifth Amendment when defendants revoked his DPE certificate without adequate notice and a fair hearing. Second, plaintiff claims that defendants released stigmatizing information about him that damaged his professional reputation, thereby depriving him of a liberty interest without due process.

Defendants moved for summary judgment on both claims, asserting qualified immunity from suit. The district court denied the motion, concluding that the DPE certificate was a "license" afforded the due process protection of the APA and that this right was clearly established in *White v. Franklin*, 637 F.Supp. 601 (N.D.Miss. 1986).[2] The district court did not rule di-

---

**1.** A third alleged violation—that defendants conspired to deprive plaintiff of his First Amendment rights in retaliation for testimony against the FAA in an unrelated matter—was dismissed at summary judgment, and that ruling is not before us on appeal.

**2.** In concluding that the district court opinion in *White v. Franklin* clearly established plaintiff's property interest in the DPE certificate, the district court did not address circuit precedent holding that "a district court opinion, particularly from outside the circuit, cannot, in and of

rectly on defendant's assertion of qualified immunity on the liberty interest claim, concluding that summary judgment was improper because "an issue of fact exists for the jury as to whether the defendants released information that damaged the plaintiff's reputation prior to his termination." *Green v. Brantley*, 719 F.Supp. 1570, 1576 (N.D.Ga.1989).[3] Defendants chose to appeal only the denial of summary judgment and qualified immunity on the property interest claim; they asserted appellate jurisdiction under *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

A panel of this court ruled that it lacked appellate jurisdiction, concluding that "the facts of *Mitchell* and those of the present case differ in material respects." 895 F.2d at 1390. After examining the policies underlying qualified immunity, the final judgment rule, the collateral order doctrine, and the decision in *Mitchell*, the panel concluded that "the denial of summary judgment on the ground of qualified immunity is not a collateral order whenever the defendants would be subjected to a trial for damages arising from the same common nucleus of operative facts regardless of the outcome of the motion." *Id.* at 1394.

## II.  DISCUSSION

### A.

The doctrine of qualified immunity affords immunity from suit to government officials performing discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Noting that legal claims "frequently run against the innocent

as well as the guilty," the Supreme Court fashioned this "objective reasonableness" standard as a way of protecting defendant officials, as well as society as a whole, from the "social costs" exacted by "insubstantial claims." *Id.* at 813–14, 102 S.Ct. at 2736.

In *Mitchell v. Forsyth*, the Supreme Court held that a district court's denial of a claim of qualified immunity is among that small class of decisions that, despite the absence of a final judgment, are appealable "final decision[s]" within the meaning of 28 U.S.C. § 1291. *Mitchell*, 472 U.S. at 530, 105 S.Ct. at 2817. Applying the "collateral order" exception to the final judgment rule, the Court concluded that the denial of a qualified immunity claim is effectively unreviewable on appeal from a final judgment and "easily meets" the remaining two criteria for an appealable interlocutory decision by conclusively determining the disputed question and by resolving a claim of right separable from, and collateral to, rights asserted in the action. *Id.* at 527, 105 S.Ct. at 2816 (citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).

The only relevant distinction between this appeal and the appeals in *Mitchell* and *Harlow* is the decision by defendant officials in this case to assert on appeal that they are entitled to qualified immunity from suit on only one of the two claims facing them. As a result, defendants here will still face trial on the liberty/reputational interest claim whether or not we conclude they are immune from suit on the property interest claim. We think this distinction is immaterial, as the same concerns

itself, settle the law" for qualified immunity purposes. *See Muhammad v. Wainwright*, 839 F.2d 1422, 1425 (11th Cir.1987).

**3.** We think this conclusion is questionable; defendant's motion may have been ripe for summary judgment consideration. In a concurrence to the panel opinion in this case, Judge Kravitch noted that the existence of a factual dispute should never preclude consideration of a qualified immunity claim at summary judgment, as long as there is sufficient factual develop-

opment to address the claim. 895 F.2d at 1394–95 (Kravitch, J., concurring) (citing *Mitchell v. Forsyth*, 472 U.S. at 528, 105 S.Ct. at 2816 (reviewing court "need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions....")).

that led the Supreme Court to refashion the doctrine of qualified immunity in *Harlow* and to allow the immediate appeal of qualified immunity denials in *Mitchell* apply with substantial force here.

Throughout its discussion of the doctrine of qualified immunity, the *Harlow* Court made no distinction between those cases that might be completely resolved through a summary judgment motion asserting qualified immunity and those cases in which only some claims were subject to dismissal on the ground of qualified immunity from suit. The Court said that the chief objective behind qualified immunity was to avoid the social costs associated with forcing public servants to defend themselves against erroneous claims. We do not read *Harlow* to suggest that these costs are avoided only when the official escapes trial entirely by asserting immunity from suit on all the claims facing him. Rather, the *Harlow* Court concluded that "public policy mandates an application of the qualified immunity standard [in a way] that would permit the defeat of *insubstantial claims* without resort to trial." *Id.* at 813, 102 S.Ct. at 2736 (emphasis added).[4]

*Harlow* recognized the importance of shielding public officials from the threat of litigation arising out of their official functions. "[W]here an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Id.* at 819, 102 S.Ct. at 2738 (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967)). In *Mitchell*, the Court made it

clear that these "consequences" include not just liability, but "the general costs of subjecting officials to the risks of trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. The Court recognized the menacing nature of personal liability, but also recognized the chilling prospect of forcing government officials to defend against claims from which they are properly immune and consequently saw qualified immunity as an "entitlement not to stand trial *or face the other burdens of litigation.*" *Id.* (emphasis added). The Court recently reaffirmed this objective in *Siegert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277, *reh'g denied* —— U.S. ——, 111 S.Ct. 2920, 115 L.Ed.2d 1084 (1991), noting that "[o]ne of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Id.* at 1793; *see also id.* at 1795 (Kennedy, J., concurring) ("[A]voidance of disruptive discovery is one of the very purposes for the official immunity doctrine . . . .").

A defendant's litigation burdens are lessened when a claim is dismissed, and he then defends against fewer claims. If a court grants qualified immunity on one civil rights issue and the defendant goes to trial on a separate issue, discovery can be limited to the issue for which the defendant official has no immunity. With at least some civil rights claims disposed of favorably for the defendants, the plaintiffs may voluntarily withdraw or settle the remaining claims. The duration of the trial—if there is a trial—will likely be shortened, the issues simplified, and the focus nar-

---

4. Since the decisions in *Harlow* and *Mitchell*, at least nine different circuit courts, including our own, have allowed defendant officials to appeal immediately a district court's denial of a claim of qualified immunity even when a trial was still necessary to resolve a remaining, official-capacity claim. *See DiMartini v. Ferrin*, 889 F.2d 922, 924–25 (9th Cir.1989); *Marx v. Gumbinner*, 855 F.2d 783 (11th Cir.1988); *Giacalone v. Abrams*, 850 F.2d 79, 84 (2d Cir.1988); *Young v. Lynch*, 846 F.2d 960, 961–63 (4th Cir.1988); *De Vargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 717–18 (10th Cir.1988); *Drake v. Scott*, 812 F.2d 395, 398 (8th Cir.), *modified on reh'g*, 823 F.2d 239 (1987); *Scott v. Lacy*, 811

F.2d 1153, 1153–54 (7th Cir.1987); *Kennedy v. City of Cleveland*, 797 F.2d 297, 305–06 (6th Cir.1986); *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1189–90 (1st Cir.1986).

It is true that the official capacity claim facing the defendant official in *Marx v. Gumbinner*, 855 F.2d 783 (11th Cir.1988), and these other cases likely imposed a smaller litigation burden than the damage claim defendants still face in this case. But, we think these cases offer strong rebuttal to arguments that *Mitchell* was concerned only with protecting a defendant official from the entire set of burdens associated with "trial."

rowed. The defendant's attorney's fees and costs may be reduced. If the remaining claims are not civil rights claims, the burden of proof and measure of damages may be very different, and damages may be substantially less than allowed in a civil rights action. *Cf. Roper v. Edwards,* 815 F.2d 1474, 1477 (11th Cir.1987) (noting divergent legal theories and different measures of proof). Or, the remaining claim may be one in which insurance coverage is available when perhaps it is unavailable for the civil rights claim. In addition, the stigma of facing suit for negligence (for example) probably is, and ought to be, less than that associated with having allegedly violated someone's civil rights. And even though the defendant may face personal liability on a separate claim, the defendant has a significant interest in having his exposure to damage liability reduced as early in the process as possible. Moreover, the plaintiff's constitutional claim may be the only federal claim in the lawsuit. If the federal claim is dismissed because of qualified immunity, the state-law claims may have no place in federal court. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."). The Second Circuit, which has indicated a willingness to accept jurisdiction over this kind of appeal, has identified the same kinds of saved litigation costs as requiring appellate consideration of a qualified immunity appeal that will still leave some issues set for trial. *Musso v. Hourigan,* 836 F.2d 736, 742 n. 1 (2d Cir.1988) ("[W]e believe that *if* qualified immunity protects [the defendant official] from liability on the fourth amendment claim, this claim should be resolved

on summary judgment in order to prevent [the defendant] from undergoing the costs of trial associated with this claim, *even though* he may have to undergo trial on the first amendment claim.") (emphasis in original).

*Harlow* recognized that for defendant officials, a pending civil rights lawsuit is a sword of Damocles. Reducing the potential for an outcome disastrous to the official by promptly dismissing claims from which he is properly immune can significantly reduce the pain and suffering that the public official and his family endures while the suit is pending. This kind of suffering can constantly grind away at the official, seriously impeding the official in the performance of his duties. Granting qualified immunity on a motion for summary judgment inherently reduces the disruption that the suit poses; for the pertinent civil rights claim, summary judgment puts an end to the distraction. Avoidance of distraction to public officials was one of the main purposes of the qualified immunity doctrine. *See Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737.

If we refused to permit government officials to appeal immediately the denial of qualified immunity when they still face some claim for personal liability damages, we would destroy the right of those officials to be free from the burdens of litigation on those claims from which they are properly immune. In a practical sense, refusing to hear appeals such as this one would effectively abolish qualified immunity for those defendants, clearly frustrating both *Mitchell* and *Harlow* by forcing government officials to litigate claims from which they are immune simply because other claims will proceed to trial regardless.[5]

---

**5.** Refusing to entertain appeals such as this one would also poorly serve the final judgment rule. That rule promotes judicial economy and holds down the costs of civil rights litigation by preventing the "obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). Adopting a rule refusing appellate jurisdiction over appeals such as this one risks artificially inflating the costs to plaintiffs of pursuing

civil rights claims, along with saddling the district and appellate courts with claims added merely to take advantage of the limits placed on interlocutory appeal.

At the district level, plaintiffs would be able to prevent defendants from obtaining interlocutory appeal by asserting additional, frivolous claims against which defendants cannot plead immunity or which may allege facts that make out violations of clearly established law. *See generally Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) (en-

See *Musso,* 836 F.2d at 742 n. 1 (citing *Mitchell* and *Harlow* for the same proposition). Nothing in *Mitchell* or *Harlow* says that a defendant has a right to qualified immunity only if the plaintiff does not allege other claims from which the defendant has no immunity.

### B.

We have focused mainly on whether an interlocutory appeal asserting qualified immunity from suit on one of several damage claims implicates the considerations underlying the qualified immunity doctrine, and whether the entitlement to qualified immunity is "effectively lost" if the defendant official must go to trial on claims from which he is properly immune. Such an appeal also fits within the *Mitchell* analysis of the remaining two requirements of the collateral order doctrine by conclusively determining the disputed question and by being conceptually separable from the substantive merits of the damage claims asserted in the suit. See *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

In the same manner as an appeal from a qualified immunity denial on all claims, an appeal from a qualified immunity denial on some but not all claims "conclusively determines the disputed question." See *Mitch-*

ell, 472 U.S. at 527, 105 S.Ct. at 2816 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. at 468, 98 S.Ct. at 2457). In *Mitchell,* the Supreme Court noted that the existence of a factual dispute is irrelevant to a determination of whether, as a matter of law, the plaintiff has alleged a violation of clearly established law, thereby defeating a defendant's claim to qualified immunity. As a result, "the court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to *stand trial* on the plaintiff's allegations." *Id.* at 527, 105 S.Ct. at 2816 (emphasis in original).

The same idea holds true in this case, where the denial of defendants' qualified immunity from suit on plaintiff's property interest claim conclusively rejected defendants' entitlement to avoid trial on that allegation. That defendants still face trial on another damage claim does not change the fact that "nothing in the subsequent course of the proceedings in the district court ... can alter the court's conclusion that the defendant is not immune" from suit on the property interest claim. See *Id.*[6]

Here, as in *Mitchell,* the question of whether the defendant official is entitled to qualified immunity on a particular damage

---

couraging federal courts in qualified immunity cases to be "alert to the possibilities of artful pleading"); *De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1190 (1st Cir.1986) (plaintiff opposed interlocutory appeal of personal capacity claims where defendant had no qualified immunity from official capacity claims) ("[T]he [alternative] approach might invite plaintiffs to include spurious injunctive claims to avoid interlocutory appeal of the immunity question, and thus force the defendant to face the tribulations of trial from which he may be properly immune.").

As for the appellate docket, a rule accepting jurisdiction of only those appeals in which all the plaintiff's claims are subject to dismissal on the ground of qualified immunity would encourage defendants to continue pursuing frivolous qualified immunity claims at the appellate level just to preserve appellate review of legitimate claims of qualified immunity. At the same time, defendants would be discouraged from acknowledging—as defendants in this case apparently have—that the plaintiff has alleged a violation of clearly established law on at least some of the claims.

6. In *Mitchell,* the Supreme Court pointed out by way of analogy that a criminal defendant is entitled to an immediate, interlocutory appeal from the denial of a double jeopardy claim because "[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred." *Mitchell,* 472 U.S. at 527, 105 S.Ct. at 2816 (quoting *Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977)). And we have entertained appeals from double jeopardy denials even where the criminal defendant faces trial on other counts arising from the same occurrence. See, e.g., *United States v. Sturman,* 679 F.2d 840, 841 n. 3 (11th Cir.1982) (appellate jurisdiction asserted over interlocutory appeal challenging one count on double jeopardy grounds, while five other counts arising from same factual nexus would proceed to trial regardless); *United States v. Larkin,* 605 F.2d 1360, 1363 & n. 9 (5th Cir.), *modified on reh'g,* 611 F.2d 585 (1979) (same, with one count challenged and three proceeding to trial regardless).

claim is also conceptually distinct from the substantive merits of that and other damage claims asserted in the suit. The Supreme Court has repeatedly "recognized that a question of immunity is separate from the merits of the underlying action for purpose of the *Cohen* test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue." *Id.* at 528–29, 105 S.Ct. at 2817 (citations omitted).

## III. CONCLUSION

The Supreme Court held in *Mitchell v. Forsyth* that appellate courts must entertain interlocutory appeals of qualified immunity denials to protect society from the costs associated with forcing public officials to defend themselves against "insubstantial claims" from which they are properly immune. For the same compelling reasons, government officials continue to be entitled to interlocutory appeal when a civil rights plaintiff attaches other counts to which the official is not immune, or when the official acknowledges that at least some of the plaintiff's allegations do make out violations of clearly established law. We therefore conclude that we have jurisdiction over defendants' appeal,[7] and hereby order that this case be returned to one of our regular panels for decision on the issue of whether defendants are entitled to qualified immunity on plaintiff's property interest claim.

JOHNSON, Circuit Judge, dissenting in which KRAVITCH, Circuit Judge, joins.

The majority's rendition of the facts and procedural posture of this case does not clearly express the narrowness of the issue now before this Court and the inconse-

quence of its resolution to the subsequent litigation of this case. The plaintiff brought a *Bivens* action against four government officials, essentially alleging two constitutional claims.[1] The defendants moved for summary judgment on several grounds, one of which was an assertion of qualified immunity. The district court denied the motion for summary judgment. The defendants appealed the denial of their motion as to only one of the claims, leaving the other claim live before the district court and ready to proceed to trial. No matter what the appellate court does at this juncture, the case against the officials will proceed. The inconsequence of appellate action in this case becomes truly obvious, however, when one examines the substance of the two claims which now awkwardly straddle the federal judicial structure, with one foot in the district court and the other in the appellate court.

In the first of the two claims ("the property interest claim"), the plaintiff alleged deprivation of a property right in his Designated Pilot Examiner's certificate without due process of law in violation of the Fifth Amendment and the Administrative Procedure Act. In the second claim ("the liberty interest claim"), he alleged deprivation of "two distinct liberty interests." *Green v. Brantley*, 719 F.Supp. 1570, 1576 (N.D.Ga. 1989). He claimed deprivation of a liberty interest in his professional reputation as a result of information released by the officials regarding the cancellation of his certificate and a deprivation of a liberty interest in pursuing his profession. The officials asserted qualified immunity on both the property interest and liberty interest claims as one ground for summary judgment in their favor. The district court

7. In his en banc brief, plaintiff drops his objections to appellate jurisdiction and asks that we address the merits of defendants' appeal. But, appellate jurisdiction must derive from Congress' Article III grant of authority, as expressed in 28 U.S.C. § 1291. As a result, "no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) (citations omitted).

1. As the majority points out, the plaintiff also brought a third claim alleging a First Amendment violation. The district court granted summary judgment on this claim in favor of the defendants, and the plaintiff did not appeal the disposition of that claim. This third claim therefore was not addressed by the panel and is not before the en banc court. *See Green v. Brantley*, 895 F.2d 1387, 1390 n. 1 (11th Cir. 1990).

denied summary judgment, however, as to both claims, finding, among other things, that the law regarding both of these rights was clearly established at the time the officials acted.[2] *Id.* at 1581–84. The officials chose to appeal the district court's denial of qualified immunity only in regard to the plaintiff's property interest claim. They did not appeal the district court's disposition of their assertions of qualified immunity on the plaintiff's claim regarding deprivation of liberty interests. *See Green,* 895 F.2d at 1392.

The defendants' decision to appeal only the denial of qualified immunity as to the property interest claim is of great significance to the jurisdictional issue now before this Court. Because of the defendants' failure to appeal the district court's denial of qualified immunity in regard to the plaintiff's liberty interests, this claim remains before the district court ready for trial on the merits. This procedural posture is of importance because under *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976), harm to one's liberty interest in reputation, standing alone, is not an actionable constitutional deprivation. Rather, to assert deprivation of a liberty interest in reputation, the plaintiff must also allege the deprivation of some concomitant property or liberty interest. *See, e.g. Campbell v. Pierce County,* 741 F.2d 1342, 1344 (11th Cir.1984) (stating that "when … damage [to reputation] is sustained in connection with a termination of employment … it may give

rise to a claim for deprivation of liberty actionable under Section 1983"), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985); *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) (restating this principle). The plaintiff alleged that his professional reputation was damaged by "the dissemination of information about his performance as an examiner," *i.e.,* the performance which allegedly led to the revocation of his Designated Pilot Examiner's certificate. *Green,* 895 F.2d at 1393. The plaintiff therefore must put on evidence concerning this allegedly improper revocation. In other words, in proving the liberty interest claim, the plaintiff must go forward with the very same evidence he would present in order to prove his property interest claim.

Consequently, even if a panel of this Court reverses the district court's denial of qualified immunity as to the property interest claim, that reversal would have practically no effect on the course of the subsequent litigation. If the "burdens of litigation" were lessened for the defendants, it would be only imperceptibly so. It is difficult to imagine that discovery would be any more limited, that the duration of trial would be any shorter, that attorneys' fees would be reduced, that the embarrassment of the legal process would be decreased, or that the distraction from official duties would be any less intense. More importantly, the defendants would remain potentially liable in money damages.[3] The many

---

**2.** As Judge Kravitch's concurrence to the original panel opinion points out, the district court also concluded in regard to the plaintiff's claim of a deprivation of a liberty interest in his professional reputation that "an issue of fact exists for the jury as to whether the defendants released information that damaged the plaintiff's reputation prior to his termination." *Green,* 719 F.Supp. at 1576. This unresolved issue of fact appears to have been only one reason why the district court denied the defendants' motion for summary judgment. The district court addressed the assertion of qualified immunity in a separate section of its opinion. The court stated that the plaintiff clearly had a property right in the certificate under established law and that "[i]t was also well settled that plaintiff had certain liberty rights entitled to protection under the Fifth Amendment." *Id.* at 1583 (emphasis added). I read this statement

to mean that in its general denial of the defendants' assertion of qualified immunity the district court intended to address the assertion of immunity in regard to not only the property interest claim but also the "two distinct liberty interests."

**3.** The majority has downplayed the significant difference between *Marx v. Gumbinner,* 855 F.2d 783 (11th Cir.1988), *abrogated on other grounds,* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1981) (abrogated in regard to discussion of absolute immunity only), and the case at bar. In *Marx,* this Court allowed an interlocutory appeal of a denial of qualified immunity on a claim for monetary damages even though reversal would not end the litigation on the merits of a claim for injunctive relief because reversal would completely terminate the defendants' personal liability. The

benefits of a successful assertion of qualified immunity simply would not inure to the defendants in this case.

Though the majority opinion will ultimately be of little consequence to the defendants in this case, it collides head on with the fundamental precepts of our federal appellate system, resulting in one further dent in the final judgment rule. There is no doubt that " 'the final judgment rule is the dominant rule in federal appellate practice.' " *DiBella v. United States,* 369 U.S. 121, 126, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962) (quoting 6 Moore, Federal Practice 113 (2d ed. 1953). It is at the very foundation of our judicial system. The first Congress, in the Judiciary Act of 1789, "established the principle that only 'final judgments and decrees' of the federal district courts may be reviewed on appeal." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (citing Judiciary Act of 1789, 1 Stat. 73, 84). "The statute has changed little since then." *Id.* When Congress acted in 1891 to create the circuit courts of appeals, "it conferred on the new intermediate appellate court the power to review and revise final judgments," in civil and criminal cases, preserving direct review by the Supreme Court for a small set of cases. *Arizona v. Manypenny,* 451 U.S. 232, 245 n. 19, 101 S.Ct. 1657, 1666 n. 19, 68 L.Ed.2d 58 (1981) (citing Judiciary Act of Mar. 3, 1891, 26 Stat. 826). Through a series of recodifications, the finality requirement has been carried forward essentially unchanged into its present form as 28 U.S.C. § 1291. *See id.*

The purposes behind this longstanding requirement of finality are manifold. First, the very structure of our judicial system requires that the appellate court give deference to the trial court in matters concerning ongoing litigation. The trial judge is "the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). "Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system." *Id.* The need to avoid "undermin[ing] the ability of district judges to supervise litigation" is of such paramount importance that in enacting section 1291 "Congress has expressed a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment." *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 430, 105 S.Ct. 2757, 2760, 86 L.Ed.2d 340 (1985). *See also Flanagan v. United States,* 465 U.S. 259, 263–64, 104 S.Ct. 1051, 1053–54, 79 L.Ed.2d 288 (1984) (stating that the final judgment rule "helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the prejudgment stages of litigation"). Second, the final judgment rule is necessary to ensure "the smooth functioning of our judicial system." *Republic Natural Gas Co. v. Oklahoma,* 334 U.S. 62, 69, 68 S.Ct. 972, 977, 92 L.Ed. 1212 (1948). *See also Budinich v. Becton Dickinson & Co.,*

Court stated, "Our point is that the entitlement to be free from suit on a claim for money damages is, in the context of a suit against a government official, conceptually distinct from an entitlement to be free from suit on a claim for injunctive relief." *Id.* at 788. The Court explained that when a suit is merely for injunctive relief "the defendant, if he loses the suit, will simply be ordered by the court to do something, at the state's expense, in his official capacity." *Id.* at 787. However, in a suit for money damages, "the losing defendant will be liable in his *personal* capacity for a monetary payment … [and] his personal assets will be subject to attachment." *Id.* at 787–88. In the instant case, however, even if the defendants succeed in obtaining a reversal of the denial of qualified

immunity as to the property claim, they will remain potentially personally liable for monetary damages on the liberty interest claim. At this point in the litigation, it would take a crystal ball to predict that the ultimate damage award, should the plaintiff succeed on the merits, would be any smaller than it would be if the defendants also faced trial on the property claim. The cold comfort of such speculation is not the kind of relief the *Marx* court envisioned as justifying an exception to the final judgment rule.

All of the cases cited in footnote 4 of the majority opinion likewise address this distinction between claims for monetary damages and claims for injunctive relief. These cases therefore lend no support to the majority's position.

486 U.S. 196, 201, 108 S.Ct. 1717, 1721, 100 L.Ed.2d 178 (1988) (quoting *Republic*). The rule "promot[es] efficient judicial administration." *Firestone*, 449 U.S. at 374, 101 S.Ct. at 673 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974)). *See also Flanagan*, 465 U.S. at 264, 104 S.Ct. at 1054 (stating that the rule is "crucial to the efficient administration of justice"). The finality requirement prevents the "piecemeal review" of district court rulings which would result in "undue litigiousness" and the "leaden-footed" advance of the judicial process. *DiBella*, 369 U.S. at 124, 369 U.S. at 656. *See also Eisen*, 417 U.S. at 170, 94 S.Ct. at 2149 (describing the rule as preventing "the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy"). Third, section 1291 prevents appellate courts from issuing what may ultimately be advisory opinions. *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 345–46, 105 S.Ct. 3180, 3201–02, 87 L.Ed.2d 220 (1985) (Brennan, J., dissenting). Finally, the rule promotes "the sensible policy of 'avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which litigation may give rise, from its initiation to entry of judgment.'" *Firestone*, 449 U.S. at 374, 101 S.Ct. at 673 (quoting *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940)). *See also Mitchell v. Forsyth*, 472 U.S. 511, 544, 105 S.Ct. 2806, 2825, 86 L.Ed.2d 411 (1985) (stating "the final judgment rule removes a potent weapon of harassment and abuse from the hands of litigants"); *Richardson*, 472 U.S. at 430, 105 S.Ct. at 2760 (noting that immediate review of trial court rulings causes "disruption, delay, and expense"); *Flanagan*, 465 U.S. at 264, 104 S.Ct. at 1054 (stating that the rule functions to "reduce[] the ability of litigants to harass opponents and

to clog the courts through a succession of costly and time-consuming appeals").

The policies behind the final judgment rule are in fact so strong that, contrary to the implications of the majority opinion, the Supreme Court has consistently "declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal" of the district court's pretrial orders and rulings. *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 499, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989). Rather than allow the rule to give way, the Supreme Court has held in the criminal context that "[b]earing the discomforture and cost of a prosecution for crime even by the innocent person is one of the painful obligations of citizenship." *Cobbledick*, 309 U.S. at 325, 60 S.Ct. at 541. Instead, a "defendant is subjected to the burden of defending himself at trial, even though the presence of errors might require reversal of his conviction and possibly a second trial." *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 268, 102 S.Ct. 3081, 3084, 73 L.Ed.2d 754 (1982) (per curiam). A subsequent reversal of the district court's error at the appellate level is considered adequate to vindicate the constitutional rights of even the unjustly accused. *Id.*

Nevertheless, the Supreme Court has created an exception to the rule known as the "collateral order doctrine" for an exceedingly small class of cases. *Midland*, 489 U.S. at 798–99, 109 S.Ct. at 1497 (describing this exception as "narrow" and "limited"). For an order to be immediately appealable, it must come within the narrow exception enunciated in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949),[4] and its progeny. "[T]o fall within the *Cohen* exception, an order must satisfy at least three conditions: 'It must "conclusively determine the disputed question," "resolve an important issue completely separate from the merits of the action," and "be effectively unreviewable on appeal

---

4. *Cohen* stated that the case must "fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be de-

nied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225.

from a final judgment." ' " *Lauro Lines,* 490 U.S. at 498, 109 S.Ct. at 1978 (quoting *Richardson,* 472 U.S. at 431, 105 S.Ct. at 2761 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978))).

The Supreme Court applied this test in *Mitchell v. Forsyth* and found a denial of qualified immunity to be appealable under the collateral order exception. *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817. *Mitchell* differs significantly from the case at bar, however, in that in *Mitchell* an appeal of the qualified immunity issue had the potential of bringing the litigation to an end. In its examination of the qualified immunity denial, the *Mitchell* court emphasized the comparison between qualified immunity and absolute immunity. *Id.* at 526, 105 S.Ct. at 2815. In fact, the Court stated, "the heart of the issue before us is the question whether qualified immunity shares [the] essential attribute of absolute immunity—whether qualified immunity is in fact an entitlement not to stand trial under certain circumstances." *Id.* at 525, 105 S.Ct. at 2815. It is because this *"immunity from suit"* would be "effectively lost if a case is erroneously permitted to go to trial" that the Court deemed it appropriate to apply the collateral order exception. *Id.* at 526–27, 105 S.Ct. at 2815–16 (emphasis in original).

Because of the peculiar procedural posture of the instant case, however, trial will proceed whatever the disposition of the appeal. This fact distinguishes the instant case from *Mitchell.* The consideration of whether the "entitlement not to stand trial" may be preserved through immediate appeal is of utmost importance in deciding whether the trial judge's ruling in this case falls within the collateral order exception. Before *Mitchell* and since, the Court has emphasized the importance of this consideration. *See Lauro Lines,* 490 U.S. at 499, 109 S.Ct. at 1978 (stating "we have insisted that the right asserted be one that is essentially destroyed if its vindication must be postponed until trial is completed"); *Hollywood,* 458 U.S. at 266, 102 S.Ct. at 3083 (stating that "[i]n addition to satisfying the

other requirements of *Cohen,* [cases allowing the collateral order exception have] involved 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.' ") (quoting *U.S. v. MacDonald,* 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)); *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225 (stating that creation of an exception to the final judgment rule for the lower court ruling in question is necessary because, "it will be too late effectively to review the present order, and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably"). The Supreme Court has recognized that "[a]dmittedly, there is value—to all but the most unusual litigant—in triumphing before trial, rather than after it, regardless of the substance of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial." *MacDonald,* 435 U.S. at 860 n. 7, 98 S.Ct. at 1552 n. 7. Whether the case at bar involves one of those "certain claims," *id.,* depends on whether the "practical value" of the right asserted, *Hollywood,* 458 U.S. at 266, 102 S.Ct. at 3083, *i.e.,* the "entitlement not to stand trial" because of qualified immunity, *Mitchell,* 472 U.S. at 525, 105 S.Ct. at 2815, may be lost unless immediately appealed. In this particular instance, because of the defendants' choice to appeal only denial of immunity as to the plaintiff's property interest claim, no such right is at risk. Trial will proceed whatever the disposition of this appeal. If the defendants lost an "entitlement not to stand trial," it was by their own choice to appeal but one issue, not because of an unwarranted stinginess of the original panel opinion in refusing to create an exception to the final judgment rule unprecedented in any circuit.

Nothing is gained by the majority's disposition of this case, but much is lost. The final judgment rule is the foundation of federal appellate procedure. To open the door of the appellate courts so casually to

this select group of defendants is, in my opinion, unnecessary and unwise. I would instead reinstate the original panel opinion. I therefore respectfully dissent.