James C. RIGDON, Plaintiff,

v.

The State of GEORGIA BOARD OF REGENTS, Robert "Tony" O'Neal, Shirley Geiger, George Williams, Jane Gates, Joseph Silver, Randy Gunter, and Carlton Brown, Defendants.

Case No. CV406–240.

United States District Court, S.D. Georgia, Savannah Division.

Dec. 17, 2008.

Alan Stewart Lowe, Buchsbaum & Lowe, LLP, Anthony Robert Casella, William G. Glass, Weiner, Shearouse, Weitz, Greenberg & Shawe, LLP, Savannah, GA, for Plaintiff.

G. Todd Carter, Laura E. Roberts, Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, LLP, Brunswick, GA, for Defendants.

## ORDER

WILLIAM T. MOORE, JR., Chief Judge.

Before this Court is Defendants' Motion for a Continuance. (Doc. 113.) Therein, Defendants ask this Court to stay the entire case, or, in the alternative, the portion of the case relating to the procedural due process claim, pending an interlocutory appeal of the denial of qualified immunity. For the reasons that follow, Defendants' Motion is **DENIED**. Parties are advised to be ready for trial of **all claims** on **January 26, 2009,** the currently scheduled trial date.

## BACKGROUND

This case involves allegations of racial discrimination and retaliation at Savannah State University ("SSU"). Plaintiff James C. Rigdon, a male Caucasian, was employed as the Head Baseball Coach and Assistant Wellness Coordinator at SSU. Concurrent with his employment, Rigdon was a graduate student pursuing a Masters in Public Administration ("MPA"). SSU is a historically black university. With the exception of the State of Georgia Board of Regents, all of the Defendants are current or former African–American faculty members and/or administrators at SSU.

The Rigdon saga started over four years ago. It began in 2004, when Rigdon filed a lawsuit in this Court against the Board of Regents, SSU President Carlton Brown, and other administrators at the University. He alleged unlawful discrimination and disparate treatment on the basis of race. In July of 2006, that case was settled on the eve of trial. *See Rigdon v. Board of*

*Regents,* CV404–149 (S.D. Ga Aug. 31, 2004) (J. Moore).

Two months after the first lawsuit settled, Mr. Rigdon returned to this Court alleging that administrators at SSU (1) terminated Rigdon from his positions as Head Baseball Coach and Assistant Wellness Coordinator, and (2) removed Rigdon from the MPA Program. *Rigdon v. Board of Regents,* CV406–240 (S.D. Ga Sept. 27, 2006) (J. Moore). He claims these adverse actions occurred because of his race and in retaliation for filing the first lawsuit. He also alleges that these *same actions* denied him due process of law with respect to his termination from the MPA program. He seeks legal and equitable remedies under 42 U.S.C. §§ 1981, 1983, & 1988 and 42 U.S.C. §§ 2000e et seq. (Title VII).

On June 27, 2008, this Court granted in part and denied in part a Motion for Summary Judgment by Defendants. (Doc. 91.) Therein, the Court dismissed the § 1983 claims against the Board of Regents, the § 1983 claims against Defendants in their official capacities, and the breach of contract claims. The Court denied summary judgment on the remaining § 1983 claims, the Title VII claims, and the due process claims.

Nearly a month later, on July 24, 2008, Defendants filed a Notice of Appeal on the denial of qualified immunity from (1) termination of an employee by a public university on the basis of race, (2) expulsion from a public university on the basis of race, (3) retaliation for filing a discrimination lawsuit, and (4) expulsion from a public university without due process of law.[1] (Doc. 94.) Defendants then asked this Court to stay the case pending appeal. (Doc. 96.) This Court denied the stay,

---

1. Defendants initially gave this Court notice that they would appeal all denials of qualified immunity, however, in the case before the Eleventh Circuit they appear to have dropped appeals on the first three claims. *Rigdon v. Bd. of Regents,* No. 08–14206 (11th Cir. July 24, 2008).

noting that Defendants' first three issues on appeal were patently frivolous, that the due process claim was secondary to the other claims, and that the appeal, in its entirety, was taken for the purposes of delay. (Doc. 100.) Defendants again move for a stay of all proceedings, or, in the alternative, for a stay of proceedings on the due process issue pursuant to a discussion at the pretrial conference. (Doc. 113.) This Court now considers that Motion.

## ANALYSIS

### I. *Scope of the Motion*

This Court has already certified that three of Defendants' four claims on appeal are wholly frivolous and lack a colorable appealable issue of law.[2] (Doc. 100 at 3.) On the basis of precedent, the Court denied a stay of the proceedings on these claims because they presented no issue on which to take an interlocutory appeal. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (noting that interlocutory appeals from decisions of qualified immunity must "turn[ ] on an issue of law" to be permissible), *Blinco v. Green Tree Servicing, LLC,* 366 F.3d 1249, 1252 (11th Cir.2004) ("[T]he district court may declare that the appeal is frivolous, and ... carry on with the case."). There is still no question of law to justify an interlocutory appeal on the three frivolous claims. Accordingly, a stay on these issues pending an interlocutory appeal would be inappropriate.

The real question, then, is what to do with the fourth issue—the procedural due process claim. On the one hand, the due process claim presents a colorable legal

issue for interlocutory review. On the other hand, this specific case is nearly three years old and is ready to proceed to trial on all other claims. Furthermore, even if Defendants win their appeal, they will face the exact same trial, with Plaintiff seeking to establish the same facts through the same witnesses. Defendants face the same trial because Rigdon's equal protection claim for his termination from the MPA program factually subsumes his procedural due process claim. That is, both claims rest on the factual basis that a rigged process was used to expel Rigdon. However, the due process claim rests entirely on the inadequacy of the process, while the equal protection claim adds to this rigged process allegations of racial animus. The Court must decide then, whether to stay any portion of the proceedings in this case when Defendants will be subjected to the exact same trial regardless of the outcome of their appeal.

### II. *Background Principles*

 Before considering this Motion, the Court considers the background principles of concurrent jurisdiction and qualified immunity, which color the Court's decision in this case.

#### A. *Federal Courts and Concurrent Jurisdiction*

"A federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district

---

**2.** This Court held in its August 4, 2008 Order, 2008 WL 2986389, that there is no question of law as to whether the following rights were clearly established: (1) the right not to be terminated from employment at a public university on the basis of race, (2) the right not to be expelled from a public university on the basis of race, and (3) the right not to be retaliated against for filing a racial discrimination lawsuit. (Doc. 100.)

court of its control over those aspects of the case involved in the appeal."

*Blinco,* 366 F.3d at 1251 (quoting *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)). Therefore, it is generally proper for a district court to stay proceedings pending an interlocutory appeal of a denial of immunity. *Id.* at 1252. However, the fact that a defendant files an interlocutory appeal does not render the district court powerless to retain jurisdiction over the case. Indeed, the district court may "declare that the appeal [of immunity] is frivolous, and ... carry on with the case." *Id.* A defendant also loses their right to take an interlocutory appeal when the appeal is taken for the purpose of delay. *See, e.g., Skrtich v. Thornton,* 280 F.3d 1295, 1306–07 (11th Cir.2002), *Apostol v. Gallion,* 870 F.2d 1335, 1339 (7th Cir.1989).

### B. *The Protections of Qualified Immunity*

■ The breadth of the protection afforded by qualified immunity is extremely broad. *See Harlow v. Fitzgerald,* 457 U.S. 800, 816–17, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Where it attaches, qualified immunity provides more than a defense to liability. *See id.* Qualified immunity is meant to avoid "the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.* at 816, 102 S.Ct. 2727. Moreover, under *Harlow,* qualified immunity can even protect an official from "broad-ranging discovery and the deposing of numerous persons, including a government official's professional colleagues" as "[i]nquiries of this kind can be peculiarly disruptive of effective government." *Id.* at 817, 102 S.Ct. 2727.

■ Although sometimes qualified immunity is casually referred to as a singular protection, it is not. Qualified immunity brings under one heading separate protections to each event in the normal progression of litigation—immunity to pretrial discovery, immunity to defending against dispositive motions, immunity to trial, and immunity to liability. *See Mitchell,* 472 U.S. 511, 105 S.Ct. 2806, *Harlow,* 457 U.S. 800, 102 S.Ct. 2727. To be sure, a failure to raise qualified immunity at a proper point may operate as a waiver of qualified immunity for that phase of the litigation only. *E.g., Maestas v. Lujan,* 351 F.3d 1001, 1008–09 (10th Cir.2003), *Skrtich,* 280 F.3d at 1306–07, *Moore v. City of Harriman,* 272 F.3d 769 (6th Cir.2001), *Guzman–Rivera v. Rivera–Cruz,* 98 F.3d 664, 667–68 (1st Cir.1996), *Apostol,* 870 F.2d at 1339. It follows, then, that a Defendant can have qualified immunity from liability, but not from trial. *Apostol,* 870 F.2d at 1339.

### III. *Jurisdiction for Interlocutory Appeals Under § 1291 and the Collateral Order Doctrine*

■ The United States Courts of Appeals are given jurisdiction over "all final decisions of the district courts of the United States...." 28 U.S.C. § 1291. As the Supreme Court has explained, "a decision [that is] 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Mitchell,* 472 U.S. at 524, 105 S.Ct. 2806 (quoting *Gillespie v. U.S. Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964)). Instead, a decision by a district court may be within " 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that the appellate consideration be deferred until the whole

case is adjudicated.'" *Id.* at 524–25, 105 S.Ct. 2806 (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). It is under this "collateral order" doctrine that interlocutory appeals from denials of qualified immunity are allowed. *Id.* at 524–30, 105 S.Ct. 2806. Importantly, the "collateral order" doctrine is not an exception to the rule in 28 U.S.C. § 1291, but rather a practical construction of it. *Swint v. Chambers County Comm'n,* 514 U.S. 35, 41–42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).

■ The *Cohen* "collateral order" doctrine requires that the order being appealed "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *Johnson v. Jones,* 515 U.S. 304, 310, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)). "The denial of a defendant's motion for dismissal or summary judgment on the ground of qualified immunity easily meets [requirements one and two]." *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806. The Supreme Court, however, needed more reasoning to conclude that the third criterion was satisfied. Ultimately, the Supreme

Court held a denial of qualified immunity meets criterion three because a post-trial review by the appeals court could not restore a defendant's immunity to the intangible burdens of litigation. *Id.* at 526–27, 105 S.Ct. 2806. In short, *Mitchell* held that it was not a defendant's immunity from liability, but rather a defendant's immunity from litigation that made a denial of qualified immunity effectively unreviewable on post-trial appeal. *Id.* Additionally, in some circumstances courts have found it improper to allow an interlocutory appeal of a denial of qualified immunity, so it cannot be contended that such appeals are allowed categorically. *See, e.g., Mitchell,* 472 U.S. at 530, 105 S.Ct. 2806 (interlocutory appeals not allowed where there is no colorable question of law), *Blinco,* 366 F.3d at 1252 (interlocutory appeals not allowed where the district court certifies that the appeal is frivolous), *Skrtich,* 280 F.3d at 1306–07 (interlocutory appeal not allowed where the district court finds delay).

■ This case presents the novel question of whether jurisdiction for interlocutory appeals of qualified immunity extends beyond those appeals that satisfy the *Cohen* test.[3] Here, Defendants cannot meet prong three of the *Cohen* collateral order test—even if Defendants win their eleventh-hour appeal of the due process issue, Plaintiff's equal protection claim ensures

---

**3.** The Court notes that this case is unlike cases such as *Green v. Brantley,* 941 F.2d 1146 (11th Cir.1991), in which the dismissal of the appealed claim would still have provided the defendant with protections significant enough to justify a conclusion that prong three of the *Cohen* collateral order test was met. Specifically, a favorable decision of the appeal in *Green* would have shielded the defendants from the stigma of a civil rights claim, and increased the likelihood of settlement by narrowing the issues in the case from two claims to one. In this case, even if Defendants win their appeal, they will still be faced with the stigma of a racial discrimina-

tion claim, seven of Plaintiff's eight claims (including the primary claims), and the same trial burdens. The Court notes that it is compelled to read *Green* this way. Were this Court to read *Green* to extend beyond cases where there are tangible benefits to the defendants for winning their interlocutory appeal, to cases such as this one, where Defendants gain nothing of consequence except immunity from liability, the Court would be dragging *Green* into contradiction with *Cohen,* as immunity to liability by itself is not sufficient to justify an interlocutory appeal under the collateral order doctrine. *See Swint,* 514 U.S. at 41–43, 115 S.Ct. 1203.

that they will be subjected to exactly the same litigation and trial burdens, including the stigma of racial discrimination claims. In other words, the practical reality is that Defendants lack trial immunity because they face the same trial regardless of the disposition of their appeal. This leaves Defendants with an interlocutory appeal based on a stand-alone claim of immunity to damages, which, as noted above, is insufficient to meet *Cohen's* third prong. *See Mitchell,* 472 U.S. at 526–27, 105 S.Ct. 2806 (finding that the third prong of *Cohen* is met not because qualified immunity provides immunity from liability, but rather because qualified immunity provides immunity from litigation); *see also Swint,* 514 U.S. at 43, 115 S.Ct. 1203 (noting that an erroneous award of damages can be sufficiently reviewed after a trial). *See generally Espinal–Dominguez v. Puerto Rico,* 352 F.3d 490, 498 (1st Cir.2003) ("Divorced from the question of whether a State can be sued at all in a federal court, the much narrower question of whether it can be held liable for a certain type of damages is a question that adequately can be reviewed following trial."), *CSX Transp. v. Kissimmee Util. Auth.,* 153 F.3d 1283, 1285–86 (noting that Florida state sovereign immunity is only an immunity to liability and not an immunity to suit, and, therefore, the denial of that immunity should be reviewed on post-trial appeal). As a stand-alone claim of immunity to damages does not satisfy the collateral order test, Defendants' appeal fails to meet the requirements for an interlocutory appeal under *Cohen.*

Although this appeal does not satisfy *Cohen,* it might be suggested that this Court should engage in a formalistic, rather than a practical, application of 28 U.S.C. § 1291 and the collateral order doctrine. In so doing, the Court would ignore the realities of this individual case and stay the trial simply because Defendants' appeal bears the heading of qualified immunity. However, the Supreme Court has foreclosed such an application of the statute, directing Courts to use a practical, not formal, interpretation of 28 U.S.C. § 1291 to determine whether or not an order is "final" for the purposes of conferring jurisdiction. *Richardson v. United States,* 468 U.S. 317, 322, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) ("[T]he words 'final decision' in § 1291 should have a 'practical rather than a technical construction.'" (quoting *Cohen,* 337 U.S. at 546, 69 S.Ct. 1221)). Additionally, staying a case because the interlocutory appeal is of a denial of qualified immunity would be inconsistent with the legion of cases holding that, under the proper circumstances, such an appeal does not invoke appellate jurisdiction. *See, e.g., Mitchell,* 472 U.S. at 530, 105 S.Ct. 2806 (interlocutory appeals not allowed where there is no colorable question of law), *Blinco,* 366 F.3d at 1252 (interlocutory appeals not allowed where the district court certifies that the appeal is frivolous), *Skrtich,* 280 F.3d at 1306–07 (interlocutory appeals not allowed where the district court finds intentional delay).

In sum, this Court finds that the practical realities of the situation make this case effectively reviewable on post-trial appeal, and, therefore, Defendants' interlocutory appeal fails to properly invoke appellate jurisdiction.[4] Accordingly, the Court

---

4. Although this Court is bound by the Supreme Court's direction to read the statute practically, the conclusion that this Court should retain jurisdiction is further supported by the reasons for allowing interlocutory appeals of denials of qualified immunity. The Eleventh Circuit provides eight reasons for allowing interlocutory appeals of qualified immunity: (1) lessening of litigation burdens, (2) increased likelihood of settlement, (3) decreased duration of the trial, (4) reduced attorney's fees and costs, (5) different burdens

retains jurisdiction over all claims and the trial will proceed as scheduled.

## IV. *Interlocutory Appeals for the Purposes of Delay*

"[D]efendants who play games with the district court's schedule forfeit their entitlement to a pre-trial appeal." *Apostol,* 870 F.2d at 1339; *see also Skrtich,* 280 F.3d at 1306 ("Defendants who abuse the pretrial process through . . . stalling . . . may waive their right to raise the defense at the pretrial stage.") Moreover, interlocutory appeals disrupt the judicial process and "[t]he quid pro quo is obvious: in exchange for the defendant's right to interrupt the judicial process, the court may expect a reasonable modicum of diligence in the exercise of that right." *Kennedy v. Cleveland,* 797 F.2d 297, 301 (6th Cir. 1986).

■ Even if Defendants could meet the requirements of *Cohen,* it is the determination of this Court that this appeal is taken primarily for the purposes of delay, and, as a result, will not be allowed. (Doc. 100 at 5.) Defendants took nearly a month to file their notice of appeal, waiting until significantly after this Court had issued its notice of pretrial proceedings. (Doc. 92.)

Then, Defendants waited 59 days from the day the case was docketed at the Eleventh Circuit to file their appellate brief, in spite of the Eleventh Circuit's 40–day deadline.[5] (Doc. 99. at 1) (11th Cir. Letter to the Parties.) Stated another way, 91 days passed between the time this Court entered an order denying Defendants' claim of qualified immunity and Defendants' filing of their appellate brief. Because of Defendants' lethargy in pursuit of the appeal, Defendants' conduct throughout the case, and the largely frivolous nature of Defendant's appeal as a whole,[6] the Court concludes that Defendants are seeking this appeal primarily for the purposes of delay. Therefore, even if this appeal were otherwise permissible as an interlocutory appeal, because it is taken primarily for delay, this Court can, and will, retain jurisdiction to try the entire case, including the due process claim.

## CONCLUSION

For the forgoing reasons Defendants' Motion to Stay Proceedings is **DENIED.** The Court concludes that it has jurisdiction to try this entire case, including the Due Process Claim. The parties are ad-

---

of proof and measures of damages, (6) differences of insurance coverage, (7) decreased stigma by the lawsuit, and (8) the potential that the federal court would lose jurisdiction entirely if a specific claim is dismissed on qualified immunity grounds. *Green v. Brantley,* 941 F.2d 1146, 1149–50 (11th Cir.1991). The Court has carefully considered these reasons and finds that none of them apply in anything more than a *de minimis* manner. At most, failure to allow the appeal could result in an additional hour or two of attorney's fees for the extra work involved in the drafting of the request to charge. Any *de minimis* value Defendants would receive by winning their qualified immunity appeal is substantially outweighed by both the need to resolve cases expeditiously and the prejudice caused by further delay. *See Guzman–Rivera,* 98 F.3d at 668 ("We must balance the need to protect

public officials from frivolous suits with the need to have cases resolved expeditiously.")

5. It is not clear why the Eleventh Circuit has not dismissed this appeal pursuant to their letter to the parties requiring the filing of the appellant's brief within forty days of the date the appeal was docketed. (Doc. 99 at 1.)

6. Defendants' other claims on appeal are that prohibitions on the discrimination on the basis of race by a public university in employment and expulsion, and retaliation by a public university against the filer of a racial discrimination law suit, are not clearly established law. Such legal claims are patently frivolous and discredit the intentions of the entire appeal.

vised to be ready to try this entire case as scheduled.