Edward MUSSO, Plaintiff–Appellee,

v.

Dale HOURIGAN and Lt. Darrell York, Individually and in their official capacities as Officers in the Wallingford Police Department, George Mazzafero and James Millar, Individually and in their official capacities as Members of the Board of Education for the Town of Wallingford, Defendants,

George Mazzafero and James Millar, Defendants–Appellants.

No. 49 Docket 87–7226.

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 1987.

Decided Jan. 5, 1988.

Winona W. Zimberlin, Hartford, Conn. (Howd & Ludorf, Hartford, Conn., of counsel), for defendants-appellants.

Mark Rademacher, New Haven, Conn. (Williams & Wise, New Haven, Conn., of counsel), for plaintiff-appellee.

Before FEINBERG, Chief Judge, and PIERCE and ALTIMARI, Circuit Judges.

PIERCE, Circuit Judge:

This is an interlocutory appeal from a decision of the United States District Court for the District of Connecticut, Jose A. Cabranes, *Judge*, granting in part and denying in part defendants-appellants' joint motion for summary judgment. The district court denied their motions with respect to the plaintiff-appellee's claim for damages under 42 U.S.C. § 1983 for violation of his first amendment rights, on the ground that appellants had not established their defense of qualified immunity. The court granted summary judgment as to one of the appellants, however, and denied it as to the other, on appellee's claim for damages arising out of an alleged false arrest. For the reasons set forth below we (1) accept jurisdiction to review the ruling on qualified immunity only, and (2) affirm in part, and reverse in part, the district court's decision on this issue.

## BACKGROUND

This litigation arises out of a series of events that took place during a meeting of the Wallingford, Connecticut, Board of Education (the "Board"), held on September 12, 1983. Among the people in attendance at the meeting that evening were Board members George Mazzafero and James Millar, the appellants herein, as well as several members of the public, including the appellee, Edward Musso. The main topic of discussion that night was whether Mazzafero, who had been filling in as acting chairman of the Board following the resignation of the elected chairman, should be permitted to serve out the remainder of the outgoing chairman's term, or whether a new election would have to be called to fill the vacancy.

During the course of the evening a debate ensued among the members of the Board concerning Mazzafero's right to succeed the former chairman. Although the meeting had progressed beyond the point during which the Board was obliged, by virtue of its bylaws, to entertain questions and comments from the public, several members of the public in attendance nevertheless openly expressed their frustration

over a lengthy procedural dispute that developed between the Board members who supported Mazzafero, and those, including Millar, who did not. Finally, after the debate had continued for some time, Musso rose from his seat in the audience and stated:

> George [referring to Mazzafero], I think you should adjourn the meeting as Timmy [Reardon, another Board member] said and forget about it. These people that can't think for themselves and have to depend on a superintendent that doesn't know what he is talking about. [sic]

At this point, according to Musso's affidavit, Millar interrupted him, shouted at him, and ordered him to be quiet. Apparently, both Millar and Mazzafero told Musso that he was out of order, "and because of the debate that followed, the police were called to remove Mr. Muzzo [sic] from the room, which they did." Consequently, Musso was placed under arrest for disorderly conduct and interfering with a peace officer, although criminal charges against him were dismissed later.

Musso subsequently commenced a civil action against (1) Dale Hourigan, the officer who had placed him under arrest, and Lieutenant Darrell York, the officer who had set Musso's bond, both individually and in their capacities as officers of the Wallingford Police Department; and (2) Mazzafero and Millar, both individually and in their capacities as members of the Board. Musso alleged, *inter alia*, that Mazzafero and Millar had acted under color of law to deprive him of the rights secured to him by the United States Constitution, as well as the laws of both the United States and the State of Connecticut. Musso charged that Millar had violated these rights by ordering him to "sit down and shut up," and by ordering a staff member to call the police for the purpose of placing Musso under arrest. Musso further charged that Mazzafero "joined in" Millar's action, and that he "failed to otherwise prevent Mr. Millar from unlawfully ordering Mr. Musso to be silent and unlawfully ordering his arrest." In response, Mazzafero and Millar filed a motion for summary judgment, arguing principally that, under the doctrine of qualified immunity, they could not be held personally liable for whatever wrongs Musso allegedly suffered. In addition, they contend on appeal that, because Musso chose to speak at a time during which public participation was foreclosed by the Board's bylaws, the demand that Musso be silent was simply an application of a reasonable time, place, and manner restriction on Musso's freedom of speech. Following a hearing on the motion, the district court issued a ruling (1) denying summary judgment as to Millar, but granting it as to Mazzafero, on the claim arising out of Musso's arrest; and (2) denying summary judgment as to both defendants on the claim arising out of the alleged silencing of Musso.

Proceeding first to the claim arising out of Musso's arrest, we note that the district court characterized the false arrest claim as presenting an issue of Connecticut state law, rather than federal constitutional law under the fourth amendment. In particular, it does not appear that the court addressed the issue of whether the doctrine of qualified immunity might shield the defendants from liability on the false arrest claim—despite the fact that appellants raised this defense in their memorandum of law in support of the motion. If our reading of the opinion is correct, however, the court's characterization of the false arrest claim as a state law cause of action is at odds with the court's order, issued fourteen months before the ruling on the summary judgment motion, dismissing Musso's state law claims for lack of pendent jurisdiction. *See* Supplemental Record, Ruling on Defendant's Motion to Dismiss, filed Oct. 9, 1985. In any event, the court found that none of the material submitted by the plaintiff indicated that Mazzafero had been actively involved in having Musso placed under arrest. Moreover, the court reasoned, Mazzafero had no obligation to obstruct the arrest once it was under way, because under Connecticut law such obstruction would have been a criminal offense, regardless of whether the arrest itself was legal or illegal. Accordingly, the court granted summary judgment as to

Mazzafero on the false arrest claim. The court denied summary judgment on the false arrest claim as to Millar, however, reasoning that the facts were in dispute as to whether Millar had "instigated" the arrest.

Turning next to Musso's claim that Mazzafero and Millar acted to silence him at the meeting, in violation of his first amendment right to freedom of expression, the district court denied summary judgment on the ground that neither defendant had established the defense of qualified immunity. Applying the objective standard set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the court reasoned that, because the first amendment right to be free of content-based censorship was "clearly established" as of September 12, 1983, the defendants could not be immune from the first amendment claim.

Following the entry of the district court's order, Mazzafero and Millar filed notice of this interlocutory appeal. Consequently, we are called on at this point to decide two principal questions: first, whether we have jurisdiction to hear this interlocutory appeal as to either or both of the claims on which the district court issued its ruling; and second, if we do have jurisdiction, whether the district court's rulings on the motion were correct.

## DISCUSSION

### A. Jurisdiction

■ The first issue we must address is whether we have jurisdiction to hear the present appeal. Although the federal courts of appeals normally may exercise jurisdiction only over "final decisions" of the district courts, 28 U.S.C. § 1291 (1982), the United States Supreme Court has recognized that, in some instances, a decision may be "final" for purposes of § 1291 even though it is not the "last order possible to be made in a case." *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964). Under the "collateral order" doctrine, a pretrial order may be appealable if it falls within "that small class which finally deter-

mine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).

■ In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court held that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable "final decision" under 28 U.S.C. § 1291, notwithstanding the absence of a final judgment. In reaching this result, the Court noted that the doctrine of qualified immunity rests on the belief that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Id.* at 525, 105 S.Ct. at 2815 (citing *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739). Among the "consequences" that the doctrine of qualified immunity is designed to forestall are not only the prospect of public officials incurring personal liability for money damages, but also "the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.* at 526, 105 S.Ct. 2815 (citing *Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737). Thus, because qualified immunity is in fact "an entitlement not to stand trial or face the other burdens of litigation," *id.*, a district court's denial of a claim of qualified immunity is an appealable "final decision" within the meaning of 28 U.S.C. § 1291. *Id.* at 530, 105 S.Ct. at 2817.

■ Applying these standards to the present case, we perceive no reason to decline jurisdiction over Mazzafero's appeal from that portion of the district court's order that denied his motion for summary judgment on the first amendment claim.

As noted above, the court granted summary judgment in favor of Mazzafero on the false arrest cause of action, albeit on grounds other than qualified immunity. Consequently, we understand Mazzafero to contest only so much of the order as denied his motion on the remaining claim, and, under the rule of *Mitchell v. Forsyth*, Mazzafero's appeal is subject to interlocutory review.

■ Millar's appeal is more problematic, however, because the district court denied summary judgment as to Millar on the false arrest claim without expressly addressing his qualified immunity defense. A narrow reading of *Mitchell* might suggest that, because the court never decided whether qualified immunity protects Millar from liability on the false arrest claim, this court does not have jurisdiction to hear his appeal from the ruling on that claim. Such reasoning might also suggest that this court should decline jurisdiction over Millar's entire appeal. Assuming, *arguendo,* that we do not have jurisdiction to hear the appeal on the false arrest claim, Millar will be forced to undergo trial, at least with respect to that claim, regardless of whether we decide the first amendment issue. Consequently, one could argue that the *Mitchell* rule permitting interlocutory review of the denial of qualified immunity does not apply under these circumstances, because Millar will not be spared the "risks of trial" on one of the charges raised against him.

We do not believe, however, that *Mitchell* should be construed so narrowly as to preclude this court from exercising jurisdiction over Millar's appeal. At least two other circuits have interpreted *Mitchell* to permit interlocutory review under circumstances similar to those presented in this case. In *Helton v. Clements,* 787 F.2d 1016 (5th Cir.1986), the defendants in a civil rights action filed a motion to dismiss on the ground of qualified immunity. The district court, however, declined to rule on the motion, stating that it would entertain no further motions until trial. On appeal, the Fifth Circuit held that the district court order, which refused to rule on a motion to dismiss based on the defense of governmental immunity, was immediately appealable, because (1) "like an explicit denial of a claim of absolute or qualified immunity, the refusal to rule on a claim of immunity until trial is 'effectively unreviewable on appeal from a final judgment;' " (2) "like the denial of a claim of immunity, the refusal to rule on such claims 'conclusively determines the defendant's claim of right not to *stand trial;'* " and (3) the claim of immunity was conceptually distinct from the merits of the plaintiff's cause of action. *Helton,* 787 F.2d at 1017 (quoting *Mitchell,* 472 U.S. at 527, 105 S.Ct. at 2816). Similarly, in *Craft v. Wipf,* 810 F.2d 170 (8th Cir.1987), the district court had denied the defendants' motion for summary judgment in a civil rights action, without expressly ruling on the defense theory that recovery would be barred by the doctrine of qualified immunity. Citing *Helton,* the Court of Appeals for the Eighth Circuit held that the denial of the motion for summary judgment was immediately appealable, and remanded to the district court to consider the qualified immunity issue. *Id.* at 173.

We are inclined to follow the approach of the Fifth and Eighth Circuits, and to entertain Millar's appeal from the denial of his motion for summary judgment on both the first amendment and false arrest claims. As the *Helton* court reasoned, the same policy considerations that militate in favor of immediate review when a district court rules that a defendant is not protected by qualified immunity, also suggest that interlocutory review is appropriate when a district court denies a motion for summary judgment *without addressing* a proffered qualified immunity defense. If we were to deny review under these circumstances, Millar would stand to lose whatever entitlement he might otherwise have not to stand trial. Consequently, we conclude that this court has jurisdiction to hear Millar's appeal on both the first amendment and false arrest claims.

**B. Qualified Immunity**

■ Under the doctrine of qualified immunity, a government official performing discretionary functions is protected from

personal liability to the extent that his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Thus, only if the law was "clearly established" at the time of the purported offense will the immunity defense fail, "since a reasonably competent public official should know the law governing his conduct." *Id.* at 818–19, 102 S.Ct. at 2738.

■ Proceeding with our review of the district court's order, we note first that, because the court did not address Millar's defense of qualified immunity on the false arrest claim, the only appropriate response at this stage is to remand this issue with instructions that the district judge consider whether qualified immunity protects Millar from fourth amendment liability. We express no opinion, at this point, on the merits of the qualified immunity defense to this cause of action.[1]

■ Turning next to the first amendment claim, we believe that the district court was correct in ruling that Millar was not shielded from first amendment liability by the doctrine of qualified immunity. As a general rule, the first amendment prohibits state action that regulates speech on the basis of content, *Police Dep't v. Mosley,* 408 U.S. 92, 95–96, 92 S.Ct. 2286, 2289–90, 33 L.Ed.2d 212 (1972), and the conduct of school board officials clearly constitutes "state action" for first amendment purposes. *See, e.g., Board of Educ. v. Pico,* 457 U.S. 853, 877–78, 102 S.Ct. 2799, 2813, 73 L.Ed.2d 435 (1982) (Blackmun, J., concurring). Moreover, even though the government may subject speech to valid time, place, and manner restrictions, such regulation is particularly circumscribed when the speech occurs in a place where public speech is usually allowed, such as an open school board meeting. *Cf. Board of Airport Comm'rs v. Jews for Jesus, Inc.,* — U.S. ——, 107 S.Ct. 2568, 2571, 96 L.Ed.2d 500 (1987); *New York City Unemployed and Welfare Council v. Brezenoff,* 677 F.2d 232, 237 (2d Cir.1982). In addition, and of great significance for purposes of the present litigation, such regulation must be content-neutral. *Heffron v. International Soc'y for Krishna Consciousness,* 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981).

■ Applying these standards to the present case, we agree with the district court that (1) a genuine issue of material fact remains as to whether Millar silenced Musso because he disagreed with the content of Musso's speech; and (2) if Millar *did* act out of such a motive, his action

---

1. We see no problem in asserting jurisdiction over the fourth amendment claim, even though, as we hold *infra,* Millar may be required to undergo trial on the first amendment claim. In both *Mitchell* and *Harlow,* the Supreme Court stated that the doctrine of qualified immunity "permit[s] the resolution of many insubstantial claims on summary judgment" and protects government officials from undergoing "'the costs of trial or the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 (citing *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2738). In the present case, we believe that *if* qualified immunity protects Millar from liability on the fourth amendment claim, this claim should be resolved on summary judgment in order to prevent Millar from undergoing the costs of trial associated with this claim, *even though* he may have to undergo trial on the first amendment claim. We note that, in a related context, several courts have held that, when a plaintiff files suit against a state official in his personal capacity for mon-

ey damages, and in his official capacity for injunctive relief, an appellate court has jurisdiction to hear the defendant's appeal from the denial of a motion for summary judgment on the ground of qualified immunity with respect to the claim for damages, even though the defendant will nevertheless have to proceed to trial on the claim for injunctive relief. *See, e.g., Drake v. Scott,* 812 F.2d 395, 398 (8th Cir.1987); *Scott v. Lacy,* 811 F.2d 1153 (7th Cir.1987); *Kennedy v. City of Cleveland,* 797 F.2d 297, 306 (6th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); *DeAbadia v. Izquierdo Mora,* 792 F.2d 1187, 1190 (1st Cir. 1986). To date, only the Fourth Circuit, in two cases decided before *Mitchell v. Forsyth,* has declined to follow this approach. *See England v. Rockefeller,* 739 F.2d 140 (4th Cir.1984); *Bever v. Gilbertson,* 724 F.2d 1083 (4th Cir.), *cert. denied,* 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984). *See also Mitchell,* 472 U.S. at 519 n. 5, 105 S.Ct. at 2812 n. 5 (declining the opportunity to address the propriety of the Fourth Circuit's approach).

violated clearly established first amendment law. We note, first, that a genuine issue of fact exists because, based on the evidence that other members of the public were permitted to voice their opinions without opposition, a rational jury could infer that Millar singled out Musso out of dislike for what Musso had to say. Of course, on consideration of all the evidence a rational jury might well reach the opposite conclusion; the point is only that the issue must be resolved by the trier of fact. Second, on the basis of the analysis set forth in the foregoing paragraphs, we conclude that *if* Millar imposed a content-based restriction, such conduct unambiguously violated clearly established first amendment law. Consequently, we must affirm the district court's order denying Millar's motion for summary judgment on the first amendment claim. *Cf. Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815 (stating that defendant is entitled to summary judgment on ground of qualified immunity, if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed acts constituting a violation of clearly established law).

Appellants' contention that the "objective" standard enunciated in *Harlow* should have precluded the district court from considering Millar's motivation for silencing Musso is unpersuasive. The *Harlow* test is objective, but in the sense that a court is precluded from determining whether a public official was actually aware of the legal standards in question; instead, the official is charged with such knowledge if the appropriate legal standard is, by objective standards, clearly established at the time the official undertook the activity at issue. Nevertheless, as the district court noted, the Supreme Court has

neither precluded all general examination of subjective intent unrelated to knowledge of the law nor altered the basic doctrine of the First Amendment that speech cannot be restricted by government officials on the basis of content except in narrowly circumscribed circumstances. *Harlow* precludes inquiry into the defendant's state of mind only with respect to the state of the law.

In other words, the *Harlow* standard requires us to decide whether under clearly established law as of September 12, 1983, content-based censorship practiced by a school board official constituted a first amendment violation. *Harlow* does not require us, as appellants would have it, to ignore the fact that intent is an element of the relevant cause of action.

■■■■ Turning next to the district court's ruling that qualified immunity does not protect Mazzafero from first amendment liability under the facts of this case, we note that Musso claims that Mazzafero both "joined in" with Millar in suppressing Musso's right to speak, and that Mazzafero "failed to prevent" Millar from violating Musso's rights. To the extent that Mazzafero is charged with "joining in" with Millar's conduct by ruling Musso out of order because he disagreed with the content of Musso's speech, we believe that the district court was correct in holding that Mazzafero's purported conduct constituted a violation of clearly established first amendment law. We note that Mazzafero has stated under oath that he ruled Musso out of order because he disagreed with what Musso was saying. *See* Transcript of Hearing in *State of Connecticut v. Edward Musso*, No. CR7–80707 (Super.Ct.Judicial District of New Haven at Meriden, Nov. 13, 1984) at 60–61. Mazzafero has since stated that he ruled Musso out of order in an attempt to restore order; thus, a genuine issue of material fact remains concerning Mazzafero's motive for silencing Musso. We do not believe, however, that Mazzafero's alleged *failure to prevent* Millar from violating Musso's first amendment rights transgressed any clearly established legal norm. As a general rule, a government official is not liable for failing to prevent another from violating a person's constitutional rights, unless the official is charged with an affirmative duty to act. *See, e.g., Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976); *Doe v. New York City Dep't of Social Servs.*, 649 F.2d 134, 141 (2d Cir.1981). Our research, however, has not uncovered any applicable case law suggesting that Mazzafero labored under a

"clearly established" affirmative duty to prevent other school board members from infringing on Musso's first amendment interests. We therefore conclude that Mazzafero's alleged failure to act is protected under the doctrine of qualified immunity, and consequently we reverse that portion of the district court's order which held that Mazzafero could be liable for failing to prevent Millar from violating Musso's first amendment rights.

In light of the foregoing discussion, we (1) affirm the denial of summary judgment as to Millar on the first amendment claim; (2) affirm the denial of summary judgment as to Mazzafero on the first amendment claim, but only to the extent that liability may be premised on Mazzafero's alleged affirmative act of "joining in" the denial of Musso's constitutional rights; (3) reverse the denial of summary judgment as to Mazzafero on the first amendment claim, to the extent that the district court held that liability could be imposed by reason of Mazzafero's alleged failure to act; and (4) remand for the district court to consider whether qualified immunity protects Millar from fourth amendment liability arising out of the alleged false arrest.