**Paula BROWN and Robert Brown**

v.

**Chief Robert SMYTHE, et al.**

**Civ. A. No. 90–3815.**

United States District Court,
E.D. Pennsylvania.

Nov. 18, 1991.

As Amended Jan. 7, 1992.

David E. Landau, Michael T. Starczewski, Hoyle, Morris & Kerr, Philadelphia, Pa., for plaintiffs.

William F. Holsten, II, Paola F. Tripodi, Holsten & White, Media, Pa., for defendants.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Plaintiffs brought suit against past and present members of the Darby Borough Council, Darby Borough Police Officers, and the Darby Borough Police Department alleging that the defendants violated plaintiff Paula Brown's civil rights by denying her freedom of expression as protected by the First Amendment to the Constitution of the United States. The allegations involve actions taken by the defendants in their capacities as members of the legislative body of Darby Borough and as police officers.

Now before this Court are Plaintiffs' Motion for Partial Summary Judgment and Defendants' response thereto; and Defendants' Motion for Summary Judgment and Plaintiffs' response thereto. For the reasons stated below, both plaintiffs' and defendants' motions will be DENIED.

## BACKGROUND

Plaintiff Paula Brown ("Mrs. Brown") and her husband Robert Brown ("Mr. Brown") brought this action alleging that the defendants engaged in ongoing conduct which violated Mrs. Brown's civil rights. The defendants are Wilber Smith ("Smith"), President of the Darby Borough Council; Robert Layden ("Layden"), Chairman of the Council's Finance and Ordinance Committee; Nicholas DiGregorio ("DiGregorio"), a former Council Member and former Council President; Robert Smythe ("Smythe"), Chief of Police for Darby Borough; and Police Officers Darrell Guy and Thomas Collins (the "Officers"). The Darby Borough Police Department is also named as a defendant.

Mrs. Brown was elected to the Borough Council in 1987 and took office on January 2, 1988. She alleges that then Darby Borough Council President, Nicholas DiGregorio, adopted *ad hoc* rules of order which operated to suppress Mrs. Brown's speech and inhibit her ability to represent her con-

stituents. These "DiGregorio Rules" required the vote of two council members to bring an issue to the floor for discussion. Council members attempting to raise an issue without the vote were ruled "out of order". Mrs. Brown avers that she was ruled out-of-order on a number of occasions.

On February 15, 1989, during a Finance Committee meeting, defendant Layden, the Chairman of the Committee, recognized defendant DiGregorio who was then no longer a council member. In his address to the Committee, DiGregorio alleged that Mrs. Brown had failed to pay her sewer tax. Mrs. Brown sought to address the allegations and was ruled out of order by Layden and Smith. Mrs. Brown refused to leave the meeting. At Smith's direction, Police Chief Smythe arrested Mrs. Brown and forcibly removed her from the council table. Plaintiff alleges that as a result of the force asserted by Smythe, she suffered injuries to her shoulder, arm, wrist, back, leg, and ankle.

Mrs. Brown was charged with obstruction of a public meeting, simple assault, aggravated assault, and disorderly conduct. At a hearing held April 5, 1989, a Pennsylvania District Court dismissed the two assault charges as well as the charge of obstructing a public meeting. Mrs. Brown was convicted of disorderly conduct and filed a notice of appeal on April 13, 1989. On April 26, 1989, Mrs. Brown was arrested again on the same charges and an additional charge of resisting arrest. At a subsequent hearing the charges of resisting arrest were bound over for trial, all other charges were dismissed. A trial was held April 4, 1990 in the Court of Common Pleas of Delaware County. Mrs. Brown was acquitted of all charges, and her summary conviction of disorderly conduct was vacated and the charge dismissed. On June 5, 1990, plaintiffs filed this action pursuant to 42 U.S.C. § 1983 and various state law theories.

## DISCUSSION

### 1. *Summary Judgment*

The purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment, shall be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing a motion for summary judgment, all reasonable doubts and inferences are in favor of the nonmoving party. *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 700 F.Supp. 838, 840 (W.D.Pa.1988).

■ A "genuine issue" of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law "will identify which facts are material." *Id.*

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court allocated the burdens of proof between the moving and nonmoving party in a motion for summary judgment. The Court held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact. Nevertheless, the movant is not required to support the motion with affidavits or other materials that negated the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552. The Court further held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions, on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

The Court also elaborated on the type of evidence that the nonmoving party is required to adduce in order to withstand a motion for summary judgment:

We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred [a genuine issue of material fact].

*Id.*

In this case, the plaintiff and the defendants have filed cross-motions for summary judgment. In *Rains v. Cascade Industries, Inc.*, 402 F.2d 241 (3d Cir.1968), the Third Circuit explained:

Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

*Id.* at 245. Thus, "the fact that both parties simultaneously are arguing that there is no genuine issue of fact does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." 10A C. Wright and A. Miller and M. Kane *Federal Practice and Procedure*, § 2720 (1983).

## 2. *Absolute Immunity*

Defendants argue that the members of the Darby Borough Council enjoy absolute immunity from all civil actions arising from acts committed within the scope of their legislative duties. The Memorandum and Order of this Court dated November 14, 1990 addressed this contention in the context of defendants' motion to dismiss. In that memorandum, the Court noted that the Third Circuit has set forth a two part test for determining whether an act may be regarded as legislative for immunity purposes. First, "the act must be 'substantively' legislative; i.e., legislative in character." *Ryan v. Burlington County*, 889 F.2d 1286, 1290–91 (3d Cir.1989). Second, "the act must be 'procedurally' legislative, that is, passed by means of established legislative process." *Id.*

In applying the *Ryan* standard, this Court found:

In the instant action the plaintiffs allege that the Borough Council attempted to stifle Mrs. Brown's speech. This would not be conduct aimed at the community at large, and therefore the Borough Council would not have been acting as a legislature *qua* legislature for immunity purposes.

*Brown v. Smythe*, No. 90–3815, *slip op.* at 8, 1990 WL 180987 (E.D.Pa. November 14, 1990). Moreover, the plaintiff alleged that the DiGregorio Rules were not enacted by, or based on, an ordinance as required by 53 Pa.Cons.Stat.Ann. § 46006(3) (Purdon Supp.1990). *Id.* at 10.

The defendants seek summary judgment arguing that the act of ruling a speaker out of order at a public meeting is inherently legislative in nature and, therefore, the Borough Council Members are absolutely immune from civil action for such acts. The defendants further argue that the DiGregorio Rules were designed to regulate the time, place, and manner of speech at the Darby Borough Council meetings, and not to prohibit any particular viewpoint or message. Finally, the defendants contend that since the instant dispute is apparently a disagreement between political adversaries, it is improper for the Court to exercise its jurisdiction.

The defendants argue that in *Collinson v. Gott*, 895 F.2d 994 (4th Cir.1990), the Court of Appeals held that "A [Council] Member's conduct at legislative committee hearings ... may not be the basis for a civil or criminal judgment against a Member because that conduct is within the 'sphere of legitimate activity.'" *Id.* at 1008. In *Collinson*, the plaintiff attended

a public meeting held by the Board of Commissioners of Calvert County, Maryland, seeking to express his views on a proposed reorganization of the county government. Prior to the meeting, the president of the board limited the time for public address to two minutes per speaker, and cautioned the speakers to "avoid discussion of personalities." When the plaintiff began speaking, the board president ruled him out of order and instructed the Deputy to remove him from the meeting. The plaintiff brought a civil rights action against the board, the president of the board, the county, and the police officers. The district court denied the plaintiff's motion for summary judgment, the defendant board member's motions to dismiss and for summary judgment, and granted the defendant police officers' motion for summary judgment by reason of qualified immunity.

The Fourth Circuit, in a divided opinion, held that the president and the police officers enjoyed immunity and the board was not liable. The court was divided on the issue of the president's immunity, one judge held that the school board president was absolutely immune; one judge held that the president had qualified immunity; and one judge would have denied the board president any form of immunity.

The Honorable James Wilkinson wrote a concurring opinion favoring the application of absolute immunity. In reaching this conclusion, Judge Wilkinson opined:

Every presiding official in a public meeting must, at some time, make a spontaneous judgment as to whether a speaker is abusing the forum. Section 1983 was not intended to make actionable isolated incidents in which politicians show poor judgment at a public meeting in calling someone out of order. My Brothers' holding will not only create a vehicle for every disgruntled speaker to force his opponents into federal court; it will require local officials to second guess themselves every time they raise the gavel.

895 F.2d at 1005–06.

Judge Wilkinson went on to find that absolute legislative immunity was appropri-

ate since the president's conduct fit within the scope of the Supreme Court's definition of legislative function as stated in *Yakus v. United States*, 321 U.S. 414, 424, 64 S.Ct. 660, 667, 88 L.Ed. 834 (1944), where the Supreme Court noted that "The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct." (quoted in *Collinson*, 895 F.2d at 1008).

Judge Wilkinson also looked to *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). In that case the Supreme Court noted that legislative acts include acts which are:

an integral part of the deliberative and communicative process by which Members participate in committee ... proceedings with respect to the consideration and passage or rejection of proposed Legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Id.* at 625, 92 S.Ct. at 2627. Thus, Judge Wilkinson concluded that "Public meetings are preeminently political institutions. Their character will be profoundly altered and their vitality lost if they are beset by litigation based on a presiding officer's *single* discretionary act." *Collinson*, 895 F.2d at 1011 (emphasis added).

Two factors distinguish the present case from *Collinson*. First, the plaintiff in this case does not allege a single isolated incident of abuse of discretion by the president of the Borough Council. Instead, the plaintiff avers a continuing course of conduct. This factor implicates First Amendment values which could be seriously eroded by affording absolute immunity in the present case. *Compare Collinson*, 895 F.2d at 1010. The Supreme Court has recognized by negative implication that a deliberate and on-going suppression of speech is more insidious to freedom of expression than a single, innocuous instance. *See Broadrick v. Oklahoma*, 413 U.S. 601, 630, 93 S.Ct. 2908, 2925, 37 L.Ed.2d 830 (1973). In *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), where the Supreme Court first announced the applicabil-

ity of absolute legislative immunity to 42 U.S.C. § 1983 actions, Justice Black wrote a concurring opinion in which he attempted to clarify the limits of the Court's holding. Justice Black cautioned:

[T]he right of every person in this country to have his say, however unorthodox or unpopular he or his opinions may be, is guaranteed by the same constitutional amendment that protects the free press. Those who cherish freedom of the press here would do well to remember that this freedom cannot long survive the legislative snuffing out of freedom to believe and freedom to speak.

*Id.* at 381, 71 S.Ct. at 790.

The second distinguishing factor is that the plaintiff in this case is a member of the Darby Council. In the *Collinson* case the plaintiff was a member to the general public. The rationale for extending absolute immunity to members of legislative bodies was explained in *Tenney*. The court explained the significance of this immunity by quoting James Wilson, a Pennsylvania delegate to the Constitutional Convention:

In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense.

341 U.S. at 373, 71 S.Ct. at 786 (*quoting, II Works of James Wilson,* 38 (Andrews ed. 1896)); *See also, Ryan,* 889 F.2d at 1290. The Supreme Court recently clarified this principal noting:

In perhaps the earliest American case to consider the import of the legislative privilege, the Supreme Judicial Court of Massachusetts, interpreting a provision of the Massachusetts Constitution granting the rights of freedom of speech and debate to state legislators, recognized that "the privilege of the house as an organized body, as of each individual member composing it, who is entitled to this privilege, even against the declared will of the house. For he does not hold

this privilege at the pleasure of the house; but derives it from the will of the people...." *Coffin v. Coffin,* 4 Mass. 1, 27 (1808). This theme underlies our cases interpreting the Speech and Debate Clause and the federal common law of legislative immunity, where we have emphasized that any restriction on a legislator's freedom undermines the "public good" by interfering with the rights of the people to representation in the democratic process.

*Spallone v. United States,* 493 U.S. 265, 110 S.Ct. 625, 634, 107 L.Ed.2d 644 (1990) (emphasis omitted). The authority to silence a legislator rests not with the legislative body itself, nor even with the judiciary, but with the people. "Self-discipline and the voters must be the ultimate reliance for discouraging such abuses." *Tenney,* 341 U.S. at 378, 71 S.Ct. at 789. Thus, the absolute immunity given to legislators must be applied so as to promote the independence to the legislative body. *U.S. v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

A local legislative body may incorporate powers that are traditionally administrative or executive in nature. Thus, the court must look to the nature of the act, and not merely the nature of the office, to determine whether a given act is protected by legislative immunity. *Ryan,* 889 F.2d at 1290–91. *See also, Walker v. Jones,* 733 F.2d 923, 929 (D.C.Cir.1984) *cert. denied* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984) ("Activities integral to the legislative process may not be examined, but peripheral activities not closely related to the business of legislation do not enjoy Speech or Debate shelter." *Id.*) Those acts which require a policy-making decision of a general scope are legislative. *Id.* "Where the decision affects a small number or a single individual, the legislative power is not implicated." *Id.*

In the present case, the plaintiff avers that the Borough Council Member defendants engaged in a deliberate and protracted effort to deprive the plaintiff of her ability to use a public forum. This alleged conduct is not related to the business of the

legislature. Indeed, the conduct is not related to any legitimate business of the Borough Council. The alleged civil rights violation was not a policy-making activity, but a calculated and extended effort to deprive the plaintiff of her constitutionally protected rights. Accordingly, the Council Members are not shielded from civil action by absolute immunity.

### 3. Qualified Immunity

■ Qualified immunity serves to insulate governmental officials from liability for civil damages when the discretionary conduct of that official "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The standard for applying qualified immunity is an objective one. The Supreme Court has instructed that the inquiry must focus on "the objective reasonableness of an official's conduct, as measured by reference to clearly established law." 457 U.S. at 818, 102 S.Ct. at 2738.

> The Court has further explained that: The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been declared unlawful, but it is to say the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1982).

■ This case involves two claims of qualified immunity: those claims of the council members, and those claims of the police officers. The defendants bear the burden of establishing the defense of qualified immunity, and a plaintiff may overcome the official's defense by demonstrating that his or her clearly established rights were knowingly or recklessly violated by that official. *Hynson v. Chester,* 827 F.2d 932, 935 (3d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988).

■ The plaintiff alleges that the Borough Council members violated her rights under the First Amendment. The right involved is the plaintiff's right to free expression, absent any state-imposed restriction on its content. In a limited public forum, free expression may be limited by content-neutral restrictions "narrowly tailored to serve a significant government interest." *Perry Education Association v. Perry Local Educators Association,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). A state may impose content-based restriction on speech only if there is "a clear and present danger that [the speech] will bring about the substantive evils that [government] has a right to prevent." *Schenck v. United States,* 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919).

The defendants argue that a reasonably competent official in the defendant council members' positions would or should have known that he could rule a speaker out of order and have him or her removed from a meeting if he reasonably believed that such action was necessary to maintain order at the meeting. Citing Judge Phillips' concurring opinion in *Collinson,* the defendants argue that an official at a public meeting has "considerable latitude for official action both in imposing general subject matter restrictions on public discussions ... and in making *ad hoc* rulings to keep discussion within reasonable time and manner bounds once a scheduled meeting was underway." 895 F.2d at 999–1000. (citations omitted).

The contours of permissible government regulation of speech at public meetings are defined in part by the reasonableness of the restraint imposed. Judge Phillips noted this in *Collinson:*

> Because of government's substantial interest in having such meetings conducted with relative orderliness and fairness to all, officials presiding over such meetings must have discretion, under the "reasonable time, place and manner" constitutional principle, to set subject matter agendas, and to cut off speech which they *reasonably* perceive to be, or imminently to threaten, a disruption of the

orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner. 895 F.2d at 1000. (footnote omitted).

Thus, the actions by the Borough Council members must be scrutinized to determine whether they were reasonable under the circumstances. In *Perry Education Association*, the Supreme Court explained that in the context of a public forum, "the rights of the State to limit expressive activities are sharply circumscribed.... For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." 460 U.S. at 45, 103 S.Ct. at 954–55. Similarly, in *Musso v. Hourigan*, 836 F.2d 736 (2d Cir.1988), the Court of Appeals for the Second Circuit held that if a school board member ruled another school board member out of order during a public meeting in an attempt to silence the member, "such conduct unambiguously violated clearly established First Amendment law." *Id.* at 743. The Second Circuit denied defendant's summary judgment motion finding that there was a question of "(1) a genuine issue of material fact remains as to whether [the school board member] silenced [the other school board member] because he disagreed with the content of [his] speech...." *Id.* at 742. The Court found that "a rationale jury could infer that [the appellant] singled out [the appellee] out of dislike for what [he] had to say." *Id.* at 742.

■ In this case the plaintiff avers that she was silenced by the Borough Council President for partisan political reasons. The evidence shows that on February 15, 1989, during a Finance and Ordinance Committee meeting, defendant DiGregorio, an audience member, was given the floor to speak. During the course of his address, he made accusations regarding Mrs. Brown's non-payment of sewerage taxes. When Mrs. Brown attempted to respond to these accusations, she was ruled out of order. When she was later given an opportunity to speak on another subject, she attempted to respond to the accusations and was ruled out of order. Clearly a jury could reasonably draw an inference that the Council President and Committee Chair Person ruled Mrs. Brown out of order in an attempt to silence her. Nevertheless, reason does not compel such a finding. A reasonable jury could also find that Mrs. Brown was ruled out of order because she was disruptive. Thus, a genuine issue of material fact exists as to the defendant council members. *Compare, Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Accordingly, plaintiff's motion for partial summary judgment and defendants' motion for summary judgment will be denied with respect to the council member defendants.

■ The defendant Police Officers also seek qualified immunity. The plaintiff asserts that these officers violated her rights constitutionally protected under the First, Fourth, and Fifth Amendments. The standards for qualified immunity which apply for the council members also apply to the officers. *Malley v. Briggs*, 475 U.S. 335 (1986). As applied to a police officer, the objective reasonableness test stated in *Harlow* is based upon a finding of "probable cause." Under this standard, even if there is a finding of no probable cause at a later hearing on the matter, a police officer may be given qualified immunity. *Floyd v. Farrell*, 765 F.2d 1 (1st Cir.1985). An officer will be held civilly liable "only if there clearly was no probable cause at the time the arrest was made." 765 F.2d at 5.

■ Mrs. Brown was arrested and charged with disorderly conduct, disruption of a public hearing, aggravated assault, simple assault and resisting arrest. At the time of the plaintiff's arrest on February 15, 1989, Police Chief Smythe testified that he originally did not intend to arrest Mrs. Brown. He contends that he decided to arrest her when she pushed him. The plaintiff argues that the alleged "push", as a matter of law is insufficient to constitute probable cause for arrest.

Simple assault, the offense for which the plaintiff was charged in connection with the "push," requires an attempt to cause serious bodily injury, causing bodily injury

with a deadly weapon, or attempt physical menacing, to put another in fear of bodily injury. Whether the alleged "push" was an attempt to cause injury or to physically menace Police Chief Smythe is a question for the jury. The determination requires a weighing of the evidence and a determination of credibility that must be left to a jury. Accordingly, the plaintiff's motion for partial summary judgment and defendants' motion for summary judgment will be denied as to the claims against the defendant Police Officers under 42 U.S.C. § 1983.

### 4. *Claims Against the Police Department*

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a Constitutional tort." *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Thus, a municipality may not be held liable under a *respondeat superior* theory. *Id.* A cause of action against a municipality lies only where the plaintiff has alleged that the injury resulted from the implementation of a policy or custom of the municipality. *Id.* at 694, 98 S.Ct. at 2037. In this case, the plaintiff alleged that the defendant police officers have acted pursuant to a policy or custom of the Darby Borough Police Department. The policy allegedly permitted arrest and incarceration without probable cause, suppression of lawful speech, and the submission of citizens to humiliation, intimidation, harassment and "dictatorial tactics."

To assert a custom or policy pursuant to a Section 1983 claim, the plaintiff must establish that the municipality's failure to educate its police officers regarding the state of the law was an established practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). In *Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court delineated the necessary elements to support a finding of "policy or custom." The relevant inquiry is whether the training which the employee receives is adequate to avoid violations of the constitutional rights of the persons with whom the employees come into contact. *Id.* To adequately maintain such a claim, the plaintiff must at least establish that:

> In light of the duties assigned to specific officers and employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.*

Plaintiff asserts that eleven complaints filed over the past six years of similar illegal conduct by officers of the Darby Borough Police Department demonstrate a pattern of deliberate indifference. What remains is a determination which would turn on the weighing of evidence. Such determination must be left to the jury. *Williams*, 891 F.2d at 460. Accordingly, the plaintiff's motion for partial summary judgment and defendants' motion for summary judgment will be denied.

### 5. *State Law Claims*

The plaintiff asserts state law claims for false arrest, false imprisonment, use of excessive force, assault, battery, malicious prosecution, and tortious infliction of emotional distress. Since each of the defendants in this case were members of the governing body of a state political subdivision, the defendants claim to be immune from such civil action pursuant to the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.Con.Stat.Ann. § 8501. This immunity from civil liability extends to all local agencies, and their employees and/or officials. The PSTCA provides the following defenses:

> (2) The defense that the conduct of the employee which gave rise to the claim was authorized by law, or that he in good faith reasonably believed that the conduct was authorized or required by law.

(3) the defense that the act of the employees which gave rise to the claim was within the policymaking discretion granted to the employee by law. For purposes of this subsection, all acts of members of the governing body of a local agency or of the Chief Executive Officer thereof are deemed to be within the policymaking discretion granted to such persons by law.

42 Pa.Cons.Stat.Ann. § 8546(2) & (3) (Purdon's Supp.1980).

The defendants argue that since the actions alleged on the part of the defendant Council Members were taken in their position as members of the governing body of the Borough of Darby, the defendant Council Members are entitled to assert the defense of official immunity pursuant to § 8546(3).

The grant of official immunity pursuant to section 8546 is limited by the provisions of 42 Pa.Con.Stat.Ann. § 8550 which provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice, or willful misconduct, the provisions of §§ 8545 (relating to official immunity generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity), and 8549 (relating to limitation on damages) shall not apply.

In the present case, the Court has determined that genuine issues of material fact exist as to whether the defendants' conduct constituted actual malice or willful misconduct. Accordingly, defendants' motion for summary judgment will be DENIED.