John CANTY

v.

CITY OF PHILADELPHIA, through the PHILADELPHIA DOMESTIC RELATIONS DIVISION CHILD SUPPORT ENFORCEMENT UNITS I & II, and the City of Philadelphia, through the Philadelphia Police Department.

No. 99–CV–3161.

United States District Court, E.D. Pennsylvania.

June 15, 2000.

James Bolden, Bolden & Coker Law Firm, Philadelphia, PA, for plaintiff.

Tremelle I. Howard, Asst. City Solicitor, City of Philadelphia Law Dept., Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

The Defendant, City of Philadelphia has filed a motion for summary judgment seeking the entry of judgment in its favor as a matter of law on all of the Counts set forth against it in the Plaintiff's Complaint. For the reasons discussed below, the motion shall be granted.

### History of the Case

This case arose on November 26, 1996 when Plaintiff, John Canty, appeared at the offices of the Philadelphia Domestic Relations Division's Child Support Enforcement Unit (hereafter "PDRD") in response to a letter which he had then-recently received indicating that his records with PDRD reflected that he owed the sum of $2,875 in past-due child support payments. This letter threatened that this delinquency was being reported to the Internal Revenue Service for collection. This was neither the first nor the last letter of this nature which the plaintiff received from the Domestic Relations Division. Prior to November 26, 1996, Mr. Canty had appeared at PDRD at least two times before in an effort to clear his records, inasmuch as he had been current in his child support obligations until they ended in 1991. Each time, the plaintiff had been assured that the matter had been resolved and his records adjusted to reflect no delinquencies.[1]

According to the Third Amended Complaint, on November 26, 1996, PDRD's employees were less than cooperative with him. Specifically, Mr. Canty avers that after he was given but before he could complete a questionnaire, one of PDRD's employees "attempted to snatch" his [delinquency] notice from his hand. Although Plaintiff then handed the notice over and the employee purportedly took it to her office and closed the door, minutes later she returned and told the plaintiff to leave the office. When Plaintiff asked for an explanation and to see a supervisor, the employee called for security, which then physically removed Plaintiff from the office by first grabbing him in a bear hug and lifting him from his feet and then "body slamming" him to the ground in the hallway outside the office. While Plaintiff lay on the ground, one security officer placed his foot on Plaintiff's back and another officer placed a foot on his neck. Both officers applied pressure while two other officers handcuffed him. Plaintiff was then detained downstairs from the offices in a holding cell for approximately three hours until he was transferred to two officers from the Philadelphia Police Department. Plaintiff was subsequently formally booked into jail where he remained until the next day when he was released on his own recognizance. He was charged with defiant trespass, disorderly conduct and failure to disperse in violation of 18 Pa.C.S.

---

1. The record reflects that PDRD continued to send identical notices to the plaintiff once a year until 1999.

§§ 3503, 5502 and 5503. These charges were all dismissed in March, 1997.

In his Third Amended Complaint, Plaintiff asserts claims against the defendants under 42 U.S.C. § 1983 for the violation of his civil and constitutional rights to due process and equal protection of the law and to be free from unreasonable searches and seizures and excessive force, and his right to be secure in his person and property. Plaintiff also asserts common law claims for false imprisonment, battery, false arrest, negligent misrepresentation, negligent infliction of emotional distress, malicious prosecution and malicious abuse of process.

### Standards Governing Summary Judgment Motions

The standards to be applied by the district courts in ruling on motions for summary judgment are set forth in Fed. R.Civ.P. 56. Under subsection (c) of that rule,

> .... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Pursuant to this rule, a court is compelled to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir. 1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990).

Generally, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa.1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa.1990).

Where, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against [it]." Fed.R.Civ.P. 56(e). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and it cannot rely on unsupported assertions, conclusory allegations, or mere suspicions or beliefs in attempting to survive such a motion. *Tziatzios v. U.S.,* 164 F.R.D. 410, 411, 412 (E.D.Pa.1996) citing *Celotex v. Catrett, supra,* 477 U.S. at 325, 106 S.Ct. at 2553–54, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202; *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3rd Cir.1989).

### Discussion

#### A. Plaintiff's Civil Rights Claims Under Section 1983.

As noted above, Plaintiff claims damages against the City of Philadelphia for, *inter alia,* violations of his constitutional rights to due process and equal protection of the law and to be free from unreasonable searches and seizures and excessive force,

as well as his right to be secure in his person and property. In so doing, Plaintiff invokes 42 U.S.C. § 1983, which states, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . .

■■■ The Supreme Court has long held that while a municipality may be a "person" within the meaning of Section 1983, it may be found liable thereunder *only* where the constitutional violation at issue has been caused by the municipality *itself.* No liability may be imposed against a municipality under a theory of vicarious liability or *respondeat superior. Collins v. City of Harker Heights,* 503 U.S. 115, 121, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992); *Monell v. New York City Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2037–2038, 56 L.Ed.2d 611 (1978). *See Also: Independent Enterprises, Inc. v. Pittsburgh Water and Sewer Authority,* 103 F.3d 1165, 1172–1173 (3rd Cir.1997). Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Collins,* 112 S.Ct. at 1066 citing *Monell,* 98 S.Ct. at 2038. *See Also: McMillian v. Monroe County,* 520 U.S. 781, 784, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997).

■■■ Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action, issues an official proclamation, policy or edict. *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3rd Cir.1990) citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Custom can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law is so well-settled and permanent as virtually to constitute law. In either case, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. *Id.*

In resolving this question, the Courts should also look to state law to ascertain whether governmental policymakers are final policymakers for the local government in a particular area or on a particular issue given that the actual function of a governmental official in a particular area will necessarily be dependent on the definition of the official's functions under relevant state law. *McMillian,* 520 U.S. at 785, 117 S.Ct. at 1737; *Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).

■■■ In addition to identifying the challenged policy and attributing it to the city itself, a plaintiff must also demonstrate a causal link between the execution of the policy and the injury which he has suffered. *Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3rd Cir.1984). Although proof of a single incident of unconstitutional activity is not sufficient, in and of itself, to establish liability, if a city can be shown to have tolerated known misconduct by police officers in the past or that its policymakers were aware of similar unlawful conduct in the past but failed to take precautions against future violations and that this failure, at least in part, caused the injury complained of, it may be

held liable. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *Bielevicz,* 915 F.2d at 851.

■ Similarly, the U.S. Supreme Court has also held that the inadequacy of police training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton v. Harris,* 489 U.S. 378, 388–389, 109 S.Ct. 1197, 1204–1205, 103 L.Ed.2d 412 (1989). This does not mean that municipal liability for failure to train can be predicated solely upon a showing that a city's employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury. *Colburn v. Upper Darby Township,* 946 F.2d 1017, 1029–1030 (3rd Cir.1991). It may be, however, that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible and for which the city may be held liable if it actually causes injury. *City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1205. In other words, the plaintiff must establish that the municipality's failure to educate its police officers regarding the state of the law was an established practice so permanent and well settled as to constitute a custom or usage with the force of law. *Brown v. Smythe,* 780 F.Supp. 274, 282 (E.D.Pa.1991).

■ In this case, Plaintiff has adduced no evidence whatsoever that his November, 1996 arrest was occasioned by an unconstitutional policy, practice or custom on the part of the City of Philadelphia or as the result of inadequate or the need for more or better training. Although Plaintiff argues that "[e]very constitutional violation or tortious conduct suffered … can be traced to the erroneous notices issued by Defendant to Plaintiff on September 27, 1995, October 15, 1996, October 17, 1997 and September 18, 1998," and that "[t]hese notices were issued pursuant to a policy or custom established by the Defendant City through its employees or policymakers," he has produced no documentary, testimonial, or other materials to demonstrate that the City knew or had reason to know that these notices were being sent out, that the mailing of these notices caused the injuries complained of, or that the members of the PDRD security force had a history of making unlawful and violent arrests without sufficient justification.

To the contrary, it appears from the plaintiff's complaint that he was only arrested and taken into custody when he refused to leave the PDRD offices and continued to insist on speaking with a supervisor. While we can certainly understand Mr. Canty's frustration with the City's Domestic Relations Division and its employees and would agree that his request was a reasonable one, the causal connection is missing here. Courts need more than the allegations in a party's pleadings to find a basis for holding a municipality liable under Section 1983.

Moreover, there is no evidence before this Court as to what training the PDRD security and other employees or the city police undergo. It is therefore impossible for this Court to find that those training programs are inadequate or that this inadequacy led to the violation of Plaintiff's constitutional rights as is necessary to support a § 1983 violation.

For all of these reasons, we must grant summary judgment in favor of the defendants on the plaintiff's federal claim.

## B. Plaintiff's state law claims.

Plaintiff also claims damages against the City of Philadelphia under the common law theories of false imprisonment, battery,

false arrest, negligent misrepresentation, negligent infliction of emotional distress, malicious prosecution and malicious abuse of process.

■ The City, however, is a "local agency" within the meaning of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, et seq.[2] Under Section 8541, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."

This is not to say that there are no exceptions to this general grant of immunity. Rather, 42 Pa.C.S. § 8542(a) states:

(a) **Liability imposed.**—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

Under the foregoing section, then, a party seeking to recover against a local agency must demonstrate that it has a common law or statutory cause of action in negligence against the local agency *and* that the local agency's alleged acts of negligence which caused the injury fall within one of the exceptions to governmental immunity. Absent a legal duty owed to the injured party, there can be no recovery against a local governmental agency. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118, 1123 (1987).

Section 8542(b) defines the eight exceptions to the blanket of immunity provided under Section 8541. These are: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. The Pennsylvania appellate courts have repeatedly ruled that these exceptions must be narrowly construed and interpreted given the express legislative intent to insulate political subdivisions from tort liability. *Mascaro; Farber v. Pennsbury School District*, 131 Pa. Cmwlth. 642, 571 A.2d 546 (1990).

In this case, the injuries of which Plaintiff complains all arose in the course of his discussions with an unidentified employee of the Philadelphia Domestic Relations Division, his subsequent arrest by PDRD security and his eventual detention and the filing of charges against him by the Police Department. As a general rule, allegations of assault and seizure and detention against one's will by a police officer have been held insufficient to defeat the governmental immunity afforded a municipality by the Tort Claims Act. *See: Sutton v. Koonce*, 1999 WL 178541 (E.D.Pa.1999); *Burger v. Borough of Ingram*, 697 A.2d 1037 (Pa.Cmwlth.1997). *See Also: Simmons v. Township of Moon*, 144 Pa. Cmwlth. 198, 601 A.2d 425 (1991) and *Lancie v. Giles*, 132 Pa.Cmwlth. 255, 572 A.2d 827 (1990).

In light of the record before us, we join company with the *Sutton* and *Burger*

---

**2.** "Local agency" is defined in 42 Pa.C.S. § 8501 as "[a] government unit other than the Commonwealth government. The term includes an intermediate unit."

courts. Indeed, Plaintiff here has not only produced no evidence that any of his claims arises out of one of the eight exceptions enumerated in Section 8542(b), he has not even pled that any one or more of the eight exceptions applies. His claims for false/wrongful imprisonment, battery, wrongful arrest, malicious prosecution and malicious abuse of process do not appear to even be negligence causes of action so as to satisfy the requirements of Section 8542(a)(2). Accordingly, we can reach no other conclusion but that judgment is now properly entered in favor of the defendant as a matter of law on all of Plaintiff's state law claims as well.